**ALBERT EINSTEIN MEDICAL CENTER, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (PERKINS), Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 6, 1997.

Decided Feb. 13, 1998.

**612**

Stephen T. Potako, Philadelphia, for petitioner.

Neil S. Kerzner, Philadelphia, for respondent.

Before DOYLE and FLAHERTY, JJ., and JIULIANTE, Senior Judge.

DOYLE, Judge.

Albert Einstein Medical Center (Employer) appeals from an order of the Workers' Compensation Appeal Board (Board) affirming in part and modifying in part a decision of the Workers' Compensation Judge (WCJ) in which the WCJ held that Employer was not responsible for paying certain medical expenses incurred by Ronald Perkins (Claimant) prior to the date on which the WCJ determined that such expenses were unreasonable and unnecessary. We affirm in part and reverse in part.

In July of 1992, Claimant was employed as a housekeeper in Employer's environmental services department earning an average weekly wage of $432.71. On July 22, 1992, while working within the course and scope of his employment, Claimant sustained a low back injury when he bent over to mop beneath a sink.

On September 21, 1992, Claimant filed a claim petition in which he alleged that he sustained a lumbosacral sprain, strain and displacement of an intervertebral disc. Subsequently, on March 1, 1993, Claimant filed a second claim petition in which he alleged that he was experiencing pain in his lower back, neck and left leg.

Some of the relevant issues were resolved through two joint stipulations of fact, executed on March 24, 1994, and October 11, 1994, in which the parties agreed, among other *things*, that the low back injury sustained by Claimant was work related and therefore compensable under the Workers' Compensation Act.[1] Additionally, in the March 24, 1994 stipulation of facts, the parties agreed that Employer was responsible for paying the reasonable and necessary medical expenses incurred in the treatment of Claimant's low back injury.

A series of hearings took place before the WCJ from June 18, 1993, through November 30, 1994. By a decision and order dated April 12, 1995, the WCJ granted the claim petition insofar as Claimant was entitled to temporary total disability benefits at the rate of $288.47 per week for the period commencing July 23, 1992, plus statutory interest, less a credit of $18,273.81 representing the amount of private disability benefits paid to Claimant. Also in his decision, the WCJ made the following relevant findings of fact:

16. The Employer ... contested the compensability of medical expenses for treatment provided by Dr. Bowden to Claimant on the basis that they were not reasonable or necessary. The parties presented medical expert testimony on this issue.

17. The [WCJ] also requested a Section 420 peer review and received a report from Louis J. Gringeri, D.O., in response thereto, which constitutes part of the evidentiary record.

18. Andrew Newman, M.D., a physician who is Board certified in orthopedic surgery, examined the Claimant on February 5, 1993, and testified as follows:

 . . . .

 d. The treatment provided by Dr. Bowden was not reasonable or necessary to treat Claimant's lower back condition. It was of no value to treat an extruded herniated disc condition and was contraindicated. . . .

 . . . .

19. John J. Bowden, Jr., D.O., one of Claimant's treating physicians, testified by deposition as follows:

 a. He is certified in family practice and pain management, but not in orthopedic surgery. . . .

---

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4.

b. He first began treating Claimant on February 17, 1993, for complaints of pain in Claimant's neck, lower back, left knee, and left leg. Claimant provided a history of injuries sustained on July 22, 1992, and in October of 1992. . . .

. . . .

j. At the time of his deposition, Dr. Bowden testified that the outstanding balance for treatments he provided to Claimant's low back and left knee from February 17, 1993, through May 27, 1994, was $44,770.00. That balance has not been broken down with regard to treatment of the low back versus treatment of the left knee. . . .

k. Dr. Bowden offered the opinion that his treatment and expenses for Claimant's low back condition and left knee condition were reasonable and necessary. . . .

l. Dr. Bowden's treatments initially took place four to five times per week and consisted of the same modalities from February of 1993 until May of 1994, when exercise therapy was added. . . .

20. The peer review report of Louis J. Gringeri, D.O., dated January 9, 1995, stated with regard to treatment provided by Dr. Bowden that "Therefore, all treatment from 9/01/93 and beyond is not considered to be medically reasonable or necessary for the above-stated injuries."

21. The Worker's Compensation Judge finds the testimony of Andrew Newman, M.D., to be more credible and more persuasive than that of John J. Bowden, Jr., D.O., because he finds Dr. Newman to have superior qualifications and greater expertise in addressing the issues of causal relationship and the reasonable[ness] and necessity of medical treatment rendered in this case. The Judge also finds that Dr. Bowden's testimony is less reliable in that he did not review sufficient past medical records and he renders opinions regarding issues in which he has a direct financial interest. While the [WCJ] has considered

the report of Dr. Gringeri, he chooses to base his opinions on the testimony of Andrew Newman, M.D., and specifically finds as follows:

a. Claimant sustained a work-related low back injury on July 22, 1992. Claimant['s] knee injury and subsequent medical treatment following a fall on October 6, 1992, at home are not causally related to Claimant's previous lower back condition and are not the natural and proximate result of said lower back injury.

b. The [WCJ] also finds, based upon the testimony of Dr. Newman, that the treatment provided by Dr. Bowden was not reasonable and not necessary for Claimant's lower back condition.

(WCJ's Decision at 5–8.) (Citations omitted.)

Consequently, the WCJ concluded that Employer was not required to pay any medical expenses relating to the treatment provided by Dr. Bowden or any medical expenses associated with the treatment of Claimant's non-work-related knee injury.[2] Claimant subsequently appealed the WCJ's decision to the Board.

By order dated February 2, 1997, the Board affirmed in part and modified in part the WCJ's decision. Specifically, the Board modified the WCJ's order with regard to Claimant's medical bills, holding that Employer was required to provide payment to Dr. Bowden for outstanding medical bills representing services rendered prior to September 1, 1993, the date specified in the peer review report as the date after which Dr. Bowden's treatment was no longer medically reasonable or necessary. Employer subsequently appealed from this decision.

This appeal principally involves specific statutory provisions added to the Workers' Compensation Act by the Act of July 2, 1993, No. 44, P.L. 190 (Act 44). Act 44 amended the Workers' Compensation Act in several significant respects, including the implementation of the "utilization review" and "peer review" processes in Section 306(f.1)(6) and Section 420 of the Act. The utilization review

2. Specifically, the WCJ stated in his April 12, 1995 order that "Employer is not responsible to pay for the medical treatment rendered by Dr. Bowden or his office." (WCJ's Decision, 4/12/95, at 10.)

process as set forth in Section 306(f.1)(6) provides as follows:

(6) **Except in those cases in which a workers' compensation judge asks for an opinion from peer review under section 420,** disputes as to reasonableness or necessity of treatment by a health care provider shall be resolved in accordance with the following provisions:

(i) The reasonableness or necessity of all treatment provided by a health care provider under this act may be subject to prospective, concurrent or retrospective utilization review at the request of an employe, employer or insurer. The department shall authorize utilization review organizations to perform utilization review under this act. Utilization review of all treatment rendered by a health care provider shall be performed by a provider licensed in the same profession and having the same or similar specialty as that of the provider of the treatment under review. Organizations not authorized by the department may not engage in such utilization review.

(ii) The utilization review organization shall issue a written report of its findings and conclusions within thirty (30) days of a request.

(iii) The employer or the insurer shall pay the cost of the utilization review.

(iv) If the provider, employer, employe or insurer disagrees with the finding of the utilization review organization, a petition for review by the department must be filed within thirty (30) days after receipt of the report. The department shall assign the petition to a workers' compensation judge for a hearing or for an informal conference under section 402.1.[3] The utilization review report shall be part of the record before the workers' compensation judge. The workers' compensation judge shall consider the utilization review report as evidence but shall not be bound by the report.

77 P.S. § 531(6) (footnote omitted) (emphasis added).[4] Similarly, the peer review process is specified in Section 420 of the Act, which provides as follows:

§ 831. Investigation of facts alleged in petition or answer; examination of person injured by physicians or surgeons

The board, the department or a workers' compensation judge, if it or he deem it necessary, may, of its or his own motion, either before, during, or after any hearing, make or cause to be made an investigation of the facts set forth in the petition or answer or facts pertinent in any injury under this act. The board, department or workers' compensation judge may appoint one or more impartial physicians or surgeons to examine the injuries of the plaintiff and report thereon, or may employ the services of such other experts as shall appear necessary to ascertain the facts. The workers' compensation judge when necessary or appropriate or upon request of a party in order to rule on requests for review filed under section 306(f.1), or under other provisions of this act, may ask for an opinion from peer review about the necessity or frequency of treatment under section 306(f.1). The peer review report or the peer report of any physician, surgeon, or expert appointed by the department or by a workers' compensation judge, including the report of a peer review organization, shall be filed with the board or workers' compensation judge, as the case may be, and shall be a part of the record and open to inspection as such. The workers' compensation judge shall consider the report as evidence but shall not be bound by such report.

77 P.S. § 831 (footnote omitted).[5]

The pivotal issue in this case involves the effect of Act 44 on the decisions of this Court

---

3. 77 P.S. § 711.1.

4. When Act 44 was originally enacted in 1993, it included a reconsideration procedure under Section 301(f.1)(6)(ii) of the Act. However, the Act of June 24, 1996, No. 57, P.L. 801, commonly referred to as "Act 57," eliminated this reconsideration stage of the utilization review process.

5. Also in Act 44, the General Assembly amended Section 109 of the Act to provide the following definition of the term "peer review":

in *Stonebraker v. Workmen's Compensation Appeal Board (Seven Springs Farm, Inc. and PMA Group),*[6] *Johnson v. Workmen's Compensation Appeal Board (Albert Einstein Medical Center),*[7] and *Boehm v. Workmen's Compensation Appeal Board (United Parcel Services),*[8] as well as other pre-Act 44 cases[9] in which we held that an employer is liable for payment of a claimant's medical expenses incurred up to the date on which the WCJ issues a final order determining that such expenses are unreasonable or unnecessary. Claimant's principal argument on appeal, and the basis of the Board's decision below, is that, pursuant to this Court's decision in *Stonebraker,* and similar cases, Employer in the instant matter is responsible for the cost of Dr. Bowden's treatment until September 1, 1993, the date specified by Dr. Gringeri in his peer review report as the date after which Dr. Bowden's treatment was no longer medically reasonable or necessary. Claimant asserts this argument despite the fact that, in the opinion of the medical expert which the WCJ found most credible, none of Dr. Bowden's medical treatment was reasonable or necessary, even before September 1, 1993.

As an initial observation, there is a crucial logical flaw in the Claimant's argument as well as in the analysis employed by the Board, because the use of the date September 1, 1993,[10] is not even consistent with the rule of law articulated by this Court in *Stonebraker,* or in the similar cases of *Boehm* and *Johnson.* If we were to follow the legal principles enunciated in *Stonebraker,* the operative date after which Employer would no longer be liable for Dr. Bowden's treatment would be April 12, 1995, the date on which the WCJ rendered his decision. If, as Claimant contends, unreasonable or unnecessary medical expenses may not be retroactively terminated back to the time treatment started in January of 1993, it logically follows that they could not be retroactively terminated back to September 1, 1993. In relieving Employer of its obligation to pay for a portion of Claimant's medical bills, the Board merely selected an operative date different from that selected by the WCJ.

"Peer review," for the purpose of undertaking reviews and reports pursuant to section 420, means review by:

(1) an impartial physician or other health care provider selected by the Secretary of Labor and Industry upon recommendation of the deans of the medical colleges located in this Commonwealth;

(2) a panel of such professionals and providers selected by the Secretary of Labor and Industry upon recommendation of the deans of the medical colleges located in this Commonwealth or recommendation of professional associations representing such professionals and providers; or

(3) a Peer Review Organization approved by the commissioner and selected by the Secretary of Labor and Industry.

77 P.S. § 29 (footnote omitted). Additional regulations relating to utilization review and peer review are set forth in 34 Pa.Code §§ 127.401–.670.

6. 163 Pa.Cmwlth. 468, 641 A.2d 655 (1994).

7. 137 Pa.Cmwlth. 176, 586 A.2d 991, *petition for allowance of appeal denied,* 530 Pa. 648, 607 A.2d 257 (1991).

8. 133 Pa.Cmwlth. 455, 576 A.2d 1163 (1990).

9. Although *Stonebraker* was decided after August 31, 1993, the effective date of Act 44, the medical expenses at issue in that case were incurred prior to the enactment of Act 44 and, therefore, before the creation and implementation of the peer review and utilization review processes.

10. The peer review report, which was erroneously marked by the Bureau of Workers' Compensation as a utilization review report, indicates that Dr. Gringeri arrived at that date for the following reason:

Mr. Perkins sustained an injury to his lumbar spine and left knee on 7/22/92. It is medically reasonable and necessary to initiate a physical therapy program consisting of conservative treatment with passive modalities for approximately 8 to 12 weeks. Following that program, the patient should be continued in a goal directed strengthening program for an additional 4 to 8 weeks. If symptoms persist, evaluation at a pain management center would be indicated.... After the above stated time frames, the patient should be continued in an independent therapy program to be conducted either at home or at a commercial gym. Continuing a formal physical therapy program with passive modalities for over 2 years past the injury would not be indicated. Therefore, all treatment from 9/1/93 and beyond is not considered to be medically reasonable or necessary for the above stated injuries.

(Dr. Gringeri's Peer Review Report at 2; Reproduced Record (R.R.) at 80a.)

In this regard, the Board improperly undermined the WCJ's role as fact finder, especially when considering the fact that Section 420 of the Act expressly provides that a WCJ **is not bound** by reports generated by the peer review process: "[t]he workers' compensation judge shall consider the report **as evidence but shall not be bound by such report.**" 77 P.S. § 831 (emphasis added). The WCJ in this case found the opinion of Employer's expert, Dr. Andrew Newman, to be more credible and persuasive than that of the impartial physician, Dr. Louis J. Gringeri, who authored the peer review report after being appointed under the provisions of Section 420 of the Act by the WCJ himself. To quote Compensation Judge Devlin: "The Worker's Compensation Judge finds ... Dr. Newman to have superior qualifications and greater expertise in addressing the issues of causal relationship and the reasonable[ness] and necessity of medical treatment rendered in this case.... While the [WCJ] has considered the report of Dr. Gringeri, he chooses to base his opinions on the testimony of Andrew Newman, M.D...." (WCJ's Opinion at 8.) It is well settled that the WCJ is the ultimate fact finder in workers' compensation cases and therefore has exclusive province over questions of credibility and evidentiary weight, and that he is free to accept or reject the testimony of any witness, including a medical witness, in whole or in part. *General Electric Co. v. Workmen's Compensation Appeal Board (Valsamaki),* 140 Pa.Cmwlth. 461, 593 A.2d 921, *petition for allowance of appeal denied,* 529 Pa. 626, 600 A.2d 541 (1991). The Board improperly infringed upon this province when it determined that Employer was responsible for paying Claimant's unreasonable and unnecessary medical expenses up to the date specified in the peer review report.

Of greater significance, however, is the fact that the precedential value of this Court's decisions in *Stonebraker, Johnson,* and *Boehm,* the principal trilogy of cases which support the Board's analysis, was drastically undermined [11] upon the enactment of Act 44 and the implementation of the utilization review and peer review processes. These decisions reflected and embraced the following principle of workers' compensation law:

> The fact that an employer must pay all medical bills pending its petition for review of the necessity for those bills, and that such petition cannot act as an automatic supersedeas, compels this interpretation of the Act. Consequently, employers will no doubt be prompted to question the necessity of medical expenses as soon as possible. Claimants, on the other hand, will be protected from the potentially devastating economic consequences stemming from determinations which find medical services already rendered to be unreasonable or unnecessary. Further, ... claimants will be protected from the potentially devastating economic or medical consequences stemming from an employer's unilateral cessation of payment of medical bills....

*Johnson,* 586 A.2d at 994.

However, in drafting and enacting Act 44, our General Assembly endeavored to address these same policy concerns by establishing a swift and efficient means by which the reasonableness and necessity of medical bills could be determined. The net product of these efforts is an extensive and detailed medical cost review system which has, in all relevant respects, legislatively superseded [12] our decisions in *Stonebraker, Johnson,* and *Boehm,* because Act 44 has essentially obviated the need for the protection afforded by those decisions.

Additionally, and contrary to the Claimant's assertion, the express terms of Section 306(f.1)(6) of the Act state that the reasonableness and necessity of previously incurred medical expenses **are** subject to retrospective evaluation: "The reasonableness or necessity

---

**11.** Section 8 of Act 44 deleted entirely section 306(f) of the Act dealing with the procedure whereby an employer could challenge the reasonableness and necessity of medical costs; specifically, section 306(f)(2)(ii), which contained the language "and during the pendency of any such petition [to review the necessity or reason-

ableness of treatment] the employer shall pay all medical bills," which was the predicate authority underpinning *Boehm, Johnson,* and *Stonebraker,* has been struck from the Act.

**12.** *See supra* note 11.

of all treatment provided by a health care provider under this act may be subject to prospective, concurrent **or retrospective** utilization review at the request of an employe, employer or insurer." 77 P.S. § 531(6)(i) (emphasis added). Although this case involves peer review as opposed to utilization review, the same retrospective consideration would naturally apply to costs determined to be unreasonable or necessary through the similar peer review process. The provisions of the Act which specifically expose previously incurred medical costs to independent medical evaluation would serve no other practical purpose but to facilitate a determination of whether an employer is liable for those costs. Furthermore, we would be directly undermining the cost-containment objectives of Act 44 if we were to hold that, despite the rather elaborate procedures delineated in Sections 306(f.1)(6) and 420 of the Act, an employer is nevertheless obligated to subsidize a claimant's previously incurred unreasonable and unnecessary medical expenses up to the date that they are pronounced as such by a WCJ, which could be years after those costs were actually incurred.[13]

Finally, we pause to mention that, in his brief and during oral argument before this Court, Claimant placed much emphasis on the fact that Employer agreed in the March 24, 1994 stipulation of facts that it would pay for medical costs relating to Claimant's work-related low back injury. However, to the extent that Claimant implies that Employer had some overriding contractual obligation to pay all of Claimant's medical bills without regard to their reasonableness or necessity, we must reject this argument. The stipulation specifically conditioned Employer's obligation to make such payments on the reasonableness and necessity of those expenses and further provided that "[E]mployer agrees to pay the following amounts to [the medical] providers listed below, [including Dr. Bowden,] **but only to the extent required by the Act**." (Stipulation of Facts, 3/2/94 at 2; R.R. at 9a.) (Emphasis added.)[14]

Accordingly, based upon the foregoing reasons, the order of the Board is hereby reversed to the extent the Board determined that Employer was responsible for any medical expenses incurred by Claimant relating to medical treatment provided to him by Dr. Bowden.

## ORDER

**AND NOW**, February 13, 1998, the order of the Workers' Compensation Appeal Board in the above captioned matter is hereby reversed insofar as it held that Albert Einstein Medical Center was responsible for the cost of medical treatment provided to Ronald Perkins by Dr. John J. Bowden, Jr. prior to

---

13. As a final observation, our holding today is consonant with the legal principle of workers' compensation law that a claimant bears the initial burden of proving all elements necessary to support an award. *Halaski v. Hilton Hotel*, 487 Pa. 313, 409 A.2d 367 (1979). Moreover, the instant appeal has come to this Court in the posture of a petition for review from a claim petition, and we have specifically held that, in this context, it is the Claimant's initial burden to establish the compensability of medical expenses:

We acknowledge that a claimant, without medical knowledge or expertise, is somewhat disadvantaged and may not question his physician's orders. However, a claimant must still be aware that an employer, challenging the alleged work-related injury, is not required to pay *all expenses*. Medical expenses must be causally connected to a claimant's compensable injuries to be subject to reimbursement. In cases where causal connection is not obvious, the claimant must prove a causal relationship between the work-injury and medical bills before the employer is required to

pay those bills.... Even if causally related, the claimant must prove that the tests were necessary.
*DeJesus v. Workmen's Compensation Appeal Board (Friends Hospital)*, 154 Pa.Cmwlth. 165, 623 A.2d 397, 400 (1993) (citation omitted) (footnote omitted) (emphasis in original) (citing *Koszowski v. Workmen's Compensation Appeal Board (Greyhound Lines, Inc.)*, 141 Pa.Cmwlth. 253, 595 A.2d 697 (1991)); *see also King v. Workmen's Compensation Appeal Board (Wendell H. Stone Co.)*, 132 Pa.Cmwlth. 292, 572 A.2d 845 (1990), *overruled in part by Stonebraker*.

14. Additionally, the WCJ determined that, based on the unequivocal testimony of Dr. Newman, the medical costs at issue in this case served **no medical or rehabilitative purpose** with respect to Claimant's work related injury and therefore found them to be unreasonable and unnecessary. Consequently, it is questionable whether these expenses may truly be characterized as **"medical"** expenses under the agreement or under the Act.

September 1, 1993. The Board's order is affirmed in all other respects.