James **CORCORAN**, Petitioner,

v.

**WORKERS' COMPENSATION APPEAL BOARD (CAPITAL CITIES/TIMES LEADER), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 13, 1998.
Decided March 2, 1999.

Gerard W. Langan, Pittston, for petitioner.

George E. Mahalchick, Scranton, for respondent.

Before DOYLE, J., FLAHERTY, J., and MIRARCHI, Jr., Senior Judge.

DOYLE, Judge.

James Corcoran (Claimant) appeals from an order of the Workers' Compensation Appeal Board, which affirmed a decision of a Workers' Compensation Judge (WCJ) granting Capital Cities/The Times Leader's (Employer) petition to terminate Claimant's benefits and its petition to review Claimant's medical treatment.

On October 7, 1992, Claimant sustained injuries to his low back and right shoulder in the course of his employment as District Circulation Manager with Employer, when he was struck by falling bundles of newspapers. Employer issued a notice of compensation payable, and Claimant began to collect workers' compensation benefits in the amount of $340 per week.

On August 16, 1993, Employer filed a petition to review medical treatment and a petition to terminate, suspend, or modify benefits as of May 13, 1993, alleging that Claimant had fully recovered from his work-related injury.

At the WCJ's hearing, Employer presented the deposition testimony of Dr. Joseph Sgarlat, who concluded that Claimant had suffered a bruising injury to his right shoulder and back sprain when he was struck by the newspaper bundles. However, Dr. Sgarlat opined that Claimant had fully recovered from these work-related injuries as of May 13, 1993. He further noted that Claimant suffers from chronic degenerative disk disease in the lower portion of his spine, which pre-existed his work-related injury, and, although Claimant's degenerative disk condition prevents him from performing work involving heavy lifting, any disability flowing from that disease is not connected to Claimant's work injury.

Regarding Claimant's medical treatment, Dr. Sgarlat noted that Claimant was receiving physical therapy three times each week and was prescribed pain medication. In light of his opinion that Claimant fully recovered from his injuries, Dr. Sgarlat concluded that ongoing physical therapy and medical treatment were unnecessary.

Claimant testified that he continued to suffer back, hip and leg pain as a result of his injuries which is brought on by prolonged sitting, standing, or certain movements. He also explained that he often needed to use a cane to walk as a result of an incident where his back "kicked out" and prevented him from moving.

Claimant introduced the deposition testimony of Dr. Albert Janerich, who concluded that Claimant suffered a significant injury and that Claimant is disabled from performing any laborious work. Dr. Janerich did not release Claimant to return to work and specifically disapproved a referral to a circulation dispatcher position offered by Employer.[1] Further, Dr. Janerich stated that the continued medical treatment he is providing to Claimant is reasonable, necessary and was causally related to Claimant's work injury.

After reviewing the above testimony, the WCJ on December 15, 1995, granted Employer's termination and review petitions. The WCJ found, accepting the opinion of Dr.

---

1. Employer introduced the testimony Margaret Ford, a rehabilitative consultant, who, relying on Dr. Sgarlat's opinion, assisted Employer in finding an appropriate position for Claimant. As a result, Employer offered Claimant the position of circulation dispatcher, a sedentary position which allowed him to sit, stand and walk on a varying basis and which paid Claimant his pre-injury salary. Claimant never responded to the offer, and, one month later, Employer hired someone else to fill the position.

Sgarlat, that Claimant had fully recovered from his work-related injuries as of May 13, 1993, and that any remaining disability was connected to Claimant's degenerative disk disease. The WCJ also concluded that Employer had no further obligation to pay for medical treatment rendered to Claimant.

Claimant appealed the WCJ's decision to the Board. In his appeal, he argued that this case should be remanded to the WCJ to receive after-discovered evidence in the form of a utilization review organization (URO) determination, dated July 22, 1994, which concluded that physical therapy rendered to Claimant from March 16 through March 21, 1994, was reasonable and necessary. The URO determination was issued after the effective date of the termination, May 13, 1993, but before the date on which the WCJ entered the decision in this matter, December 15, 1995. In addition, Claimant argued that Dr. Sgarlat's opinion was internally inconsistent and, thus, did not constitute competent evidence.

The Board rejected Claimant's arguments and affirmed the WCJ. This appeal followed.

Claimant contends that the Board erred in failing to remand this case to receive the URO determination into the record, and in failing to conclude that the opinion of Dr. Sgarlat did not constitute substantial competent evidence.

Utilization review (UR) had its genesis in the Act of July 2, 1993, P.L. 90 (Act 44), which amended Section 306(f.1)(6) of the Workers' Compensation Act (Act).[2] Prior to the enactment of Act 44, an employer was required to file a review petition in order to contest the reasonableness and necessity of a claimant's medical expenses, a protracted procedure which did not, and could not, act as a supersedeas as to the payment of those disputed bills. *See Stonebraker v. Workmen's Compensation Appeal Board (Seven Springs Farm, Inc.)*, 163 Pa.Cmwlth. 468, 641 A.2d 655 (1994). The Legislature, through Act 44, replaced the former procedure with UR, a process where UROs comprised of health care providers review the

reasonableness and necessity of medical bills. UR was intended by the Legislature to operate as a faster and more efficient method of determining the reasonableness and necessity of medical treatment. *Warminster Fiberglass v. Workers' Compensation Appeal Board (Jorge)*, 708 A.2d 517 (Pa.Cmwlth. 1998); *Albert Einstein Medical Center v. Workers' Compensation Appeal Board (Perkins)*, 707 A.2d 611 (Pa.Cmwlth.1998).

The UR process as set forth in Section 306(f.1)(6) of the Act is as follows:

(6) [D]isputes as to reasonableness or necessity of treatment by a health care provider shall be resolved in accordance with the following provisions:

(i) The reasonableness or necessity of all treatment provided by a health care provider under this act may be subject to prospective, concurrent or retrospective utilization review at the request of an employe, employer or insurer. The department shall authorize utilization review organizations to perform utilization review under this act. Utilization review of all treatment rendered by a health care provider shall be performed by a provider licensed in the same profession and having the same or similar specialty as that of the provider of the treatment under review. Organizations not authorized by the department may not engage in such utilization review.

(ii) The utilization review organization shall issue a written report of its findings and conclusions within thirty (30) days of a request.

(iii) The employer or the insurer shall pay the cost of the utilization review.

(iv) If the provider, employer, employe or insurer disagrees with the finding of the utilization review organization, a petition for review by the department must be filed within thirty (30) days after receipt of the report. The department shall assign the petition to a workers' compensation judge for a hearing or for an informal conference under section 402.1.[3] The utilization review report

---

2. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 531(6).

3. 77 P.S. § 711.1.

shall be part of the record before the workers' compensation judge. The workers' compensation judge shall consider the utilization review report as evidence but shall not be bound by the report.

77 P.S. § 531(6).[4]

Further, Section 306(f.1)(6) of the Act is augmented by extensive regulations found at 34 Pa.Code §§ 127.401–.556. In particular, 34 Pa.Code § 127.406 establishes the scope of review of a URO:

(a) UROs shall decide only the reasonableness or necessity of the treatment under review.

(b) UROs **may not** decide any of the following issues:

**(1) The causal relationship between the treatment**

**under review and the employe's work-related**

**injury.**

(2) Whether the employee is still disabled.

(3) Whether "maximum medical improvement" has been obtained.

(Emphasis added.) Additionally, 34 Pa.Code § 127.470 explains the duties of a URO when reviewing disputed medical treatment:

(a) Reviewers shall decide only the issue of whether the treatment under review is reasonable or necessary for the medical condition of the employe.

(b) Reviewers shall assume the existence of a causal relationship between the treatment under review and the employe's work-related injury. Reviewers may not consider or decide issues such as whether the employe is still disabled, whether maxi-

mum medical improvement has been obtained, quality of care or the reasonableness of fees.

 The preceding regulations clearly limit the URO's role to deciding the issue of reasonableness and necessity of medical treatment, and unambiguously exclude from the URO's scope of review the issues of whether medical treatment is causally related to a workplace injury and whether a claimant is disabled. Questions of causation and disability must be decided by a workers' compensation judge and not by a URO. *Bloom v. Workmen's Compensation Appeal Board (Keystone Pretzel Bakery)*, 677 A.2d 1314 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 546 Pa. 657, 684 A.2d 558 (1996).

In the present case, Claimant contends that the Board erred in not remanding this matter to the WCJ to receive the "after discovered" URO determination,[5] because the URO's finding that the physical therapy treatments rendered in March of 1994 were reasonable and necessary contradicts the WCJ's finding that Claimant fully recovered from his injury as of May 13, 1993. We disagree with Claimant's analysis and his argument.

 Because the scope of review of a URO is strictly limited to reviewing the reasonableness and necessity of medical treatment, the URO's decision that the physical therapy provided to Claimant was reasonable and necessary does not establish that the treatment was causally related to Claimant's work-related injury or that Claimant remains disabled by his *work-related* injury. The treatment provided was indeed probably reasonable, but it was provided for a *non*-work-

4. When Act 44 was originally enacted in 1993, it included a reconsideration procedure under Section 301(f.1)(6)(ii) of the Act. However, the Act of June 24, 1996, P.L. 350, commonly referred to as "Act 57," eliminated the reconsideration stage of the utilization review process.

5. Claimant asserts in his brief that the URO determination was after-discovered evidence, because the record was closed, and the parties were awaiting the decision of the WCJ at the time the URO determination was made. However, this assertion is puzzling because Claimant states in his brief that the URO determination

was dated July 22, 1994, yet the record shows that this case was concluded before the WCJ on February 25, 1995 and that the WCJ's decision was issued on December 15, 1995. Furthermore, the parties were taking depositions of witnesses between October and December of 1994, months after the URO decision was made. Even assuming that the URO report was discovered after the record was closed but before the WCJ's decision was issued, Claimant does not explain why he did not petition the WCJ to reopen the record.

related injury. These critical questions of causation and disability were within the exclusive province of the WCJ to resolve, *Bloom,* and not the URO. For that reason, the WCJ's findings that Claimant's work-related disability ceased and that any remaining disability was the result of a non-work-related condition cannot be affected by the URO's determination. Hence, the URO report is irrelevant to the issues presented in the Employer's termination petition.[6]

Therefore, the Board did not abuse its discretion by denying Claimant's request to remand this matter.[7]

Claimant also contends that Dr. Sgarlat's opinion was internally inconsistent and equivocal, and therefore cannot support the WCJ's decision to terminate his benefits. Specifically, Claimant notes that Dr. Sgarlat recognized that Claimant, prior to his injury on October 7, 1992, was able to perform his job as circulation manager despite his pre-existing degenerative disk disease and recognized that Claimant's problems did not begin until after that injury. He also notes that Dr. Sgarlat restricted Claimant's work activities, recommending a lighter duty job. Again, we disagree.

■ Generally, an expert's testimony is unequivocal when the expert opines that, in his or her professional opinion, the result in question did come from the assigned cause. *Lewis v. Commonwealth,* 508 Pa. 360, 498 A.2d 800 (1985). Expert testimony is competent to support a finding of fact even where the witness admits to uncertainty, doubt, reservation, or a lack of information with regard to medical and scientific details; provided that the witness does not recant the opinion or belief first expressed. *Philadelphia College of Osteopathic Medicine v. Workmen's Compensation Appeal Board (Lucas),* 77 Pa. Cmwlth. 202, 465 A.2d 132 (1983).

■ Our review of Dr. Sgarlat's testimony reveals that he unequivocally opined that Claimant had fully recovered from his work injury. Furthermore, with regard to the work restrictions, Dr. Sgarlat connected the need for those restrictions to Claimant's non-work-related condition and not to his work-related injury. Although Dr. Sgarlat did state during cross-examination that Claimant could do his job prior to October 7, 1992, and that Claimant's complaints did not develop until after that injury, answers given during cross-examination do not destroy the effectiveness of a physician's previous opinion. *Hannigan v. Workmen's Compensation Appeal Board (Asplundh Tree Expert Co.),* 151 Pa.Cmwlth. 252, 616 A.2d 764 (1992), *petition for allowance of appeal denied,* 535 Pa. 670, 634 A.2d 1118 (1993). Rather, such statements go to the weight, not the competency, of Dr. Sgarlat's opinion, and questions of the weight and credibility of medical testimony are within the exclusive province of the WCJ to resolve. *Id.* Therefore, this argument is without merit.

Accordingly, the Board's order is affirmed.

---

6. Claimant asserts that, because the URO found the physical therapy to be reasonable and necessary, it naturally follows that he is not recovered from his work-related injury. However, even assuming that the URO report is relevant to causation, which it is not, in light of the fact that Claimant suffered from a continuing non-work-related disability caused by degenerative disk disease, the URO's conclusion that the disputed physical therapy was medically reasonable and necessary does not automatically show that Claimant is not fully recovered from his work injury.

7. Claimant does not contend in this appeal that Employer has refused to pay the bills for the disputed physical therapy treatment. And, Employer does not assert that it need not pay those bills.
 Nevertheless, we note that the physical therapy reviewed by the URO was administered to Claim-

ant in March in 1994, which was subsequent to the effective date of the termination. The WCJ, relying on the opinion of Dr. Sgarlat, found that Claimant had fully recovered from his work-related injury as of May 13, 1993, and that no further medical treatment for that condition was required. Therefore, because Claimant was no longer disabled and needed no additional medical treatment at the time he received the physical therapy, that treatment, regardless of whether or not the URO found it to be medically reasonable and necessary, was not related to his work injury. *See Consolidated Freightways v. Workmen's Compensation Appeal Board (Jester),* 145 Pa. Cmwlth. 369, 603 A.2d 291 (1992) (an employer's responsibility for a claimant's medical expenses ends when a termination petition is granted).

## ORDER

NOW, March 2, 1999, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby affirmed.