IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Giorgi Global Holdings, Inc., :
                   Petitioner :
                    :
      v. : No. 548 C.D. 2023
                    :
Edy Garcia (Workers' Compensation :
Appeal Board), :
               Respondent : Submitted: May 7, 2024

BEFORE:   HONORABLE ANNE E. COVEY, Judge
             HONORABLE ELLEN CEISLER, Judge
             HONORABLE MATTHEW S. WOLF, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                         FILED: June 5, 2024

Giorgi Global Holdings (Employer) petitions this Court for review of the May 23, 2023 order of the Workers' Compensation Appeal Board (Board), which affirmed a decision by a workers' compensation judge (WCJ) granting a Claim Petition filed by Edy Garcia (Claimant) and denying Employer's petition to terminate Claimant's wage loss benefits (Termination Petition). Employer argues that the WCJ relied on incompetent, equivocal testimony by Claimant's medical expert, and that he failed to support his decision with substantial, competent evidence. After review, we affirm.

## I. Background

Claimant began working for Employer as a mushroom scaler and picker on October 23, 2011. Certified Record (C.R.), Item No. 10, WCJ Decision, 11/22/2022, Finding of Fact (F.F.) No. 5(a). In February 2020, Claimant sustained "intense" pain in both shoulders. *Id.*, F.F. No. 5(c). Claimant underwent physical therapy, but as her symptoms persisted, she was forced to stop working on July 14, 2021. *Id.*, F.F.

No. 5(d). Claimant underwent surgery to address her issues on July 26, 2021, and spent approximately four months in recuperation before returning to work on November 11, 2021. *Id.*, F.F. Nos. 7(d), 12(e).

On August 25, 2021, Employer issued an amended Notice of Compensation Payable (NCP), in which it accepted liability for Claimant's injury. *See* C.R., Item No. 36. The medical-only NCP listed Claimant's injury as bilateral shoulder pain from scaling and as a sprain or tear in the shoulders. *Id.* Claimant filed her Claim Petition on September 1, 2021, seeking wage loss benefits for bilateral shoulder damage caused by "[r]epetitive use and motion coupled with awkward positioning." *Id.* Citing the results of an independent medical examination (IME), Employer filed its Termination Petition on December 14, 2021, alleging full recovery. *See* C.R., Item No. 6.

Claimant's and Employer's petitions were consolidated for disposition by a WCJ, who held several hearings on the matter. WCJ Decision, 11/22/2022, Record. During the proceedings, Claimant offered her own testimony, offered through a Spanish interpreter, at a November 2, 2021, deposition and at a May 9, 2022 hearing before the WCJ. Claimant also offered a written report from Dr. Brittany Hacken, her treating physician, in lieu of expert testimony.[1] Employer offered a written report and deposition testimony by Dr. Jeffrey Malumed, who performed the IME

---

[1] Section 422(c) of the Workers' Compensation Act (Act) provides that when a claim involves disability of 52 weeks or less, the parties may submit certificates or reports by health care providers as evidence of the cause of injury and extent of disability, and findings of fact may be based thereon. Act of June 2, 1915, P.L. 736, *as amended*, added by the Act of June 26, 1919, P.L. 642, *as amended*, 77 P.S. § 835. In this instance, the WCJ limited Claimant's disability claim to (1) total disability from July 15, 2021, to November 11, 2021, and (2) partial disability from November 11, 2021, to July 14, 2022. WCJ Decision, 11/22/2022, F.F. No. 16(e).

of Claimant, as well as deposition testimony by Lizbeth Colon, Employer's human resources manager.

## A. Claimant's Evidence

At the time of her deposition testimony, Claimant was 67 years old. C.R., Item No. 21, Garcia Dep. Tr. at 7. Claimant recalled that she began working for Employer as a mushroom scaler on October 23, 2011. *Id.* In that capacity, Claimant was responsible for pulling trays of mushrooms off a conveyor belt, carrying them to a weighing table, weighing them, and placing them back on the belt, where they were sent for packing. *Id*. at 8. When the line was stopped, Claimant would continue weighing the mushroom trays, then lift them to a separate stand, which was above the height of her shoulders. *Id.* at 9-10. Claimant typically repeated this process with 12 to 14 trays per minute. *Id.* at 9. Asked to explain video footage shown by Employer's counsel showing workers performing her tasks without lifting over the shoulder, Claimant maintained that overhead lifting is a regular occurrence in her work.[2] C.R., Item No. 18, 5/9/2022 Hr'g Tr. at 20-21.

In February, 2020, while at work, Claimant began experiencing a pain in her right shoulder, which soon spread to her left shoulder. Garcia Dep. Tr. at 10. The pain became intense enough at times that it eventually led to difficulty with sleeping or performing tasks such as dressing and undressing. *Id.* at 18. Claimant acknowledged complaining of pain in her right shoulder to her primary care physician as early as 2017, but did not mention a work connection, and did not receive treatment. 5/9/2022 Hr'g Tr. at 27. An occupational health specialist

---

[2] In preparation for her testimony, Claimant was asked to review video footage of employees performing work similar to her own. 5/9/2022 Hr'g Tr. at 20. The video, which was recorded by human resources manager Lizbeth Colon (whose testimony is summarized below), was admitted as an exhibit and viewed by the WCJ. *See* WCJ Decision, F.F. No. 13.

prescribed a physical therapy regimen, which Claimant underwent twice a week for several months. Garcia Dep. Tr. at 15. Injections by a pain management doctor followed, which only provided momentary relief. *Id.* at 16. Still in search of effective treatment, Claimant underwent surgery to her left shoulder by Dr. Hacken on July 26, 2021. *Id.* at 18. While the surgery resulted in some relief, Claimant testified that she continued to feel substantial pain, particular in her right shoulder, for which she hoped to undergo a second surgery. *Id.* at 20. To help recover from the operation, Claimant was given a shoulder sling, which she was still wearing as of November, 2021, as well as prescription pain relief. *Id.* at 19.

At the May 9, 2022 hearing before the WCJ, Claimant reported that she had returned to work in a modified capacity on November 11, 2021. 5/9/2022 Hr'g Tr. at 15. Claimant also testified that some pain in her shoulders persisted, but that it had been alleviated considerably since her surgery. *Id.* at 16. Although she continued to visit with Dr. Hacken, Claimant completed her physical therapy in January, 2021. *Id.* at 16. To address her persistent pain symptoms, Claimant was planning to meet with Dr. Hacken approximately two weeks after her testimony to discuss surgery on her right shoulder. *Id.* at 17.

In her report, Dr. Hacken recalled that she first examined Claimant on December 29, 2020. *See* C.R., Item No. 23, Hacken Report at 1 (unpaginated). At that appointment, Claimant presented with bilateral shoulder pain leading to difficulties with work and with sleeping. *Id.* Dr. Hacken understood Claimant's work activities to include "repetitive work moving trays and weighing mushrooms . . . performed at about chest level with occasional activity over shoulder height." *Id.* Following the examination, Dr. Hacken ordered a magnetic resonance image (MRI) of Claimant's left shoulder, which revealed a full thickness tear of two tendons in

4

the shoulder, as well as a tear of the biceps tendon. *Id.* Considering both the MRI and the clinical examination, Dr. Hacken gave an initial diagnosis of "a left shoulder rotator cuff tear, biceps tendinitis[,] and subacromial bursitis and impingement." *Id.* After a series of injections resulted in only partial, ephemeral relief, Dr. Hacken decided to perform a left shoulder arthroscopic rotator cuff repair. *Id.* Since the operation, Claimant's condition has "significantly improved," but Dr. Hacken did not believe that she has reached maximum medical improvement. *Id.* at 2 (unpaginated). Dr. Hacken had not yet ordered an MRI of Claimant's right shoulder, but, based on examinations and clinical symptoms, believed that it suffered from the same ailments as the left shoulder. *Id.*

Due to what she referred to as the "chronic nature" of the rotator cuff tear evinced by the MRI, as well as the absence of a specific injury, Dr. Hacken could not "definitively state a cause of [Claimant's] shoulder pain." *Id.* Dr. Hacken explained that it was not possible to determine whether Claimant's symptoms could be ascribed to a work-related injury or "just age-related rotator cuff tears over the years." *Id.* However, Dr. Hacken did believe that those repetitive tasks "contributed to [Claimant's] pain and played a role in [the] symptomatic worsening of her symptoms." *Id.* Dr. Hacken further explained that the lifting at chest height described by Claimant "does involve shoulder abduction and use of the rotator cuff," making it "likely" that Claimant's work played a role in her condition. *Id.* at 2-3 (unpaginated). Regarding work restrictions, Dr. Hacken continued to caution against "any overhead activity with [Claimant's] right shoulder," and was considering a second operation for that shoulder. *Id.*

**B. Employer's Evidence**

At a May 2, 2022 deposition, Dr. Malumed recalled that he performed an IME of Claimant on November 11, 2021. C.R., Item No. 32, Malumed Dep. Tr. at 22. Dr. Malumed explained that as part of his medical practice, he performed "four to five" IMEs per week, some of which began with referrals from Employer's counsel. *Id.* at 33. At her IME, Claimant presented with reduced range of motion and some weakness in her left shoulder. Claimant also presented with "some weakness in . . . the rotator cuff muscles" in the right shoulder, but otherwise exhibited a full range of motion in that shoulder. *Id.* at 23.

Following the examination and a review of medical records, including the MRI ordered by Dr. Hacken, Dr. Malumed agreed with Dr. Hacken's conclusion that Claimant was suffering from "a massive rotator cuff tear." *Id.* at 25. However, Dr. Malumed also opined that the evidence was "consistent with longstanding, chronic tears. *Id.* at 25. Dr. Malumed explained that the MRI indicated not only a tear of the rotator cuff but fatty atrophy, a process by which muscle tissue turns into fat, and which results from years of gradual changes, not a single injury. *Id.* at 16.

To corroborate his belief that the rotator cuff tear was chronic and age-related, Dr. Malumed pointed to records indicating that Claimant was complaining of back pain to health care providers as early as 2017. *Id.* at 26. Dr. Malmued reasoned that Claimant was able to continue working for at least four years in spite of such symptoms because she was "moving her arms and moving her elbows and her hands with these mushrooms, not really moving her shoulders very much." *Id.* at 25. Even if it is conceded that Claimant must "occasionally" lift above her shoulders, Dr. Malumed opined, that type of activity "is not going to cause bilateral chronic massive rotator cuff tears." *Id.* at 21-22. Thus, Dr. Malumed concluded that

Claimant's July 26, 2021 surgery was not in any way related to her employment. *Id.* at 30-31. Dr. Malumed rather believed that Claimant's ability to continue working through shoulder pain was consistent with a temporary sprain of the shoulder, from which she has fully recovered. *Id.* at 31.

At a March 1, 2022 deposition, Lizbeth Colon testified that she served as Employer's human resources manager since 2015. C.R., Item No. 30, Colon Dep. Tr. at 7. Ms. Colon also occasionally helped out on the line where Claimant works, performing the same tasks. *Id.* at 10. After listening to a summary of Claimant's testimony, Ms. Colon did not dispute the accuracy of Claimant's characterization of the job. *Id.* at 12. Ms. Colon referred to the occasional lifting of mushroom trays to an alternate location off the line as "dumping," and explained that it involved pouring mushrooms out of their plastic trays into temporary cardboard containers. *Id.* at 13. For each occurrence, workers such as Claimant must pull the cardboard container off a mounted rack, which Ms. Colon acknowledged was "a little above shoulder level." *Id.* Ms. Colon estimated that the dumping occurs "once or twice in a week," lasting one or two hours each time. *Id.*

After Claimant was released back to work with restrictions by Dr. Hacken, Ms. Colon offered her a modified position, with reduced hours, on November 3, 2021. *Id.* at 19. Ms. Colon explained that the position allowed Claimant to work on a slower-paced line with no production quota, where she handled more delicate mushrooms in a "very meticulous process." *Id.* at 19. Since Claimant's return to work in that capacity, Ms. Colon reported that there have been no issues with her work, and that Claimant in fact received a pay raise in February, 2022. *Id.* at 21.

7

## C. The WCJ's Decision

In a November 21, 2022 decision, the WCJ determined that "Claimant has met her burden of proof on the Claim Petition," finding that "she sustained a work-related injury . . . in the nature of an aggravation of a left shoulder chronic massive rotator cuff tear." WCJ Decision, Conclusion of Law (C.L.) No. 2. Employer was found to have failed its burden of proof that Claimant had recovered from any work injury as of November 11, 2021. *Id.*, C.L. No. 5. The WCJ explained that he credited Claimant's testimony in full, based on his review of the record (which, he found, gave no indication of malingering or symptom magnification on Claimant's part) as well as his observations of Claimant as she testified. *Id.*, F.F. No. 16(a). Regarding Ms. Colon's testimony, the WCJ stated that he found her credible, but rejected her testimony on the nature of Claimant's work in favor of Claimant's own testimony. *Id.*, F.F. No. 16(b). The WCJ explained that Ms. Colon only worked intermittently in Claimant's position, whereas Claimant had done the job "daily for ten years based on the evidence of the record." *Id.* Even Ms. Colon's testimony, the WCJ noted, acknowledged the occasional necessity of overhead lifting.[3] *Id.*

Regarding the testimony of the medical experts, the WCJ found Dr. Hacken's opinions "to be more credible and persuasive than those of Dr. Malumed," for several reasons. *Id.*, F.F. No. 16(c). Most notable in the WCJ's view was that, as Claimant's treating physician, Dr. Hacken has observed Claimant on multiple occasions over a broad period, whereas Dr. Malumed "saw Claimant on one

---

[3] The WCJ also found the video recorded by Ms. Colon unpersuasive, as it only showed workers performing the job on single occasion, as opposed to the ten years over which Claimant performed it. WCJ Decision, F.F. No. 16(b). Most notably, in the WCJ's view, the video failed to show employees working while the line was down, which was allegedly when Claimant needed to perform overhead lifting. *Id.*

occasion for purposes of" an IME. *Id.* The WCJ also contrasted Dr. Hacken's practice as a treating physician with Dr. Malumed's office, which he labeled "a medical/legal practice" on the basis of how frequently it conducts IMEs. *Id.* Additionally, WCJ expressed admiration for "Dr. Hacken's affiliation with the Mayo Clinic, one of the leading medical institutions in the world." *Id.*

While acknowledging that Dr. Hacken declined to state definitively whether Claimant's ailment was work related, the WCJ accepted her "clearly set[] forth" opinion "that Claimant's activities in weighing the trays at chest height aggravated Claimant's underlying shoulder condition such that Claimant required surgery and restrictions for her left shoulder and continued treatment for her right shoulder." *Id.* The WCJ also dismissed Claimant's prior pain complaints as insignificant, noting that "there is no evidence of record that Claimant missed time from work on account of these complaints or that any significant treatment protocol was initiated at that time." *Id.* In conclusion, the WCJ determined that Claimant was entitled to total disability benefits from July 15, 2021, until her November 11, 2021 return to work, and was entitled to temporary total disability benefits for that period. *Id.*, F.F. No. 16(e). Because of the reduction in Claimant's hours after her return, the WCJ also awarded partial disability benefits for the period between November 11, 2021, and July 14, 2022,[4] with subsequent benefits suspended. *Id.*

---

[4] The WCJ explained that the July 14, 2022 cutoff date was the result of a stipulation by Claimant to limit the period of her claim to 52 weeks. WCJ Decision, F.F. No. 16(e); *see also* C.R., Item No. 17, 2/9/2022 Hr'g Tr. at 7.

9

Employer appealed to the Board, which affirmed the WCJ. *See* C.R., Item No. 13. This appeal followed.[5, 6]

## II. Issues

Employer argues that the opinions set forth in Dr. Hacken's report are incompetent and equivocal as a matter of law, and that two of the WCJ's chief findings—of a causal connection between Claimant's work and her injuries, and of the occurrence of an aggravation injury—are not supported by substantial evidence.

## III. Discussion

### A. Competence of Claimant's Medical Expert

When applied to medical evidence, the issue of competence involves the question of whether an expert witness's opinion is sufficiently definite and unequivocal to render it admissible. *Pryor v. Workers' Comp. Appeal Bd. (Colin Serv. Sys.)*, 923 A.2d 1197, 1203 (Pa. Cmwlth. 2006). When a reviewing court assesses competence, a medical expert's opinion must be viewed as a whole, and even inaccurate information will not render the opinion incompetent unless it is dependent on those inaccuracies. *Casne v. Workers' Comp. Appeal Bd. (Stat Couriers, Inc.)*, 962 A.2d 14, 16 (Pa. Cmwlth. 2008). The question of competence is one of law, fully subject to our review. *Cerro Metal Prods. Co. v. Workers' Comp. Appeal Bd. (PLEWA)*, 855 A.2d 932, 937 (Pa. Cmwlth. 2004).

---

[5] This Court's review is limited to determining whether the necessary findings of fact were supported by substantial evidence, constitutional rights were violated, or errors of law were committed. *Borough of Heidelberg v. Workers' Comp. Appeal Bd. (Selva)*, 928 A.2d 1006, 1009 (Pa. 2007). Where the issue presented involves a question of law, our standard of review is *de novo* and our scope of review is plenary. *Id.*

[6] On appeal, Employer petitioned this Court for supersedeas, which we denied in an August 7, 2023 order.

Instantly, Employer raises two objections to the finding of Dr. Hacken's competence, the first being that the doctor's "apparent lack of knowledge of Claimant's pre-injury bilateral [shoulder pain] renders her opinions incompetent as a matter of law." Employer's Br. at 18. In support, Employer points to this Court's holding in *Southwest Airlines/Cambridge Integrated Service v. Workers' Compensation Appeal Board (King)*, 985 A.2d 280 (Pa. Cmwlth. 2009). In that case, a claimant airline operations agent alleged that she suffered a head injury after being hit by a metal door in a passenger jetway. *Id.* at 281. The claimant's medical expert was apparently unaware of the numerous incidents in which claimant sustained purported head injuries, including four for which she had filed workers' compensation claims in the previous dozen years. *Id.* at 282. A WCJ nonetheless credited the claimant's expert's testimony over the employer's. *Id.* at 285. We reversed the WCJ and Board, on the ground that the medical expert "relied upon [the c]laimant's own self-serving statements and was unaware of her extensive medical history which included numerous prior injuries to [her] head and neck." *Id.* at 288.

Citing *King*, Employer takes issue with the WCJ's finding that Claimant's prior complaints of shoulder pain were insignificant because they did not lead to significant time off work. *See* WCJ Decision, F.F. No. 16(c). In Employer's view, "it is the **complaints** that are significant under *King*, and not whether the complaints resulted in any missed time from work." Employer's Br. at 18 (emphasis in original). Employer maintains that the issue, properly framed, is "whether Claimant's current disability was a natural progression of [a] pre[]existing condition or a work[-]related aggravation." *Id*. at 19. Since "it is entirely conceivable that the medical condition responsible for Claimant's prior complaints naturally progressed to the point of disability over the course of a several years," Employer reasons, Dr. Hacken could

not have rendered a competent opinion on Claimant's condition without knowledge of that condition prior to 2020. *Id.*

We disagree that Dr. Hacken's opinions are legally incompetent. While her written report does not include explicit references to Claimant's pre-2020 complaints of shoulder pain, Dr. Hacken fully acknowledged the possibility that the pain was not "definitively due to a work-related injury." Hacken Report at 2 (unpaginated). Indeed, Dr. Hacken alludes to the inference that "age-related rotator cuff tears *over the years*" are a cause as well. *Id.* (emphasis added). In other words, the fact that Claimant complained of shoulder pain in 2017 does not stand at odds with Dr. Hacken's conclusions in any way. The instant case is therefore distinguishable from *King*, in which the claimant's medical expert postulated a definite "causal relationship" between her injury and the "alleged incident."[7] 985 A.2d at 286. We therefore reject Employer's argument that any past complaints of injury symptoms by a claimant, if not fully acknowledged by his or her medical expert, renders that expert's testimony incompetent. Such a sweeping interpretation of *King* would fail to account for situations, such as the one here, in which working conditions were alleged to have aggravated a condition already present.

Employer's second objection to the crediting of Dr. Hacken's testimony is that it is equivocal. It is well settled that, in cases where the causal connection between a claimant's work and his injury is not obvious, including heart attack cases, the connection must be established by unequivocal medical testimony. *Bemis v.*

---

[7] In *King*, the expert's testimony on causation was particularly vital to the claimant's case because "there were no physical findings of trauma in any of [the c]laimant's medical records." 985 A.2d at 283, 287. Even the alleged incident on the jetway causing the injury, this Court noted, was "not supported by any evidence in the record." *Id.* at 287 n.6. *King* thus stands in even further contrast from the instant case, where it is undisputed that Claimant has sustained rotator cuff tears, and where record evidence supports the WCJ's conclusion that her work played a role in her injury.

12

*Workers' Comp. Appeal Bd. (Perkiomen Grille Corp.)*, 35 A.3d 69, 72 (Pa. Cmwlth. 2011). In other words, the medical witness must testify not that the injury or condition might have or possibly came from the assigned cause but that, in his professional opinion, the result in question did come from the assigned cause. *Id.* The law does not require every utterance by a medical witness to be certain, positive, and without reservation or exception; thus, the use of words such as "probably," likely," or "somewhat" will not render his opinion equivocal so long as the testimony, read in its entirety, is unequivocal and the witness does not recant the opinion or belief first expressed. *Id.*

In *Bemis*, a claimant restaurant manager presented the testimony of his cardiologist that a heart attack, which occurred while the claimant was at work, was caused by his lifting of heavy kegs and pots in the course of his employment. *Id.* at 71. While acknowledging that the claimant already suffered from a heart condition, the cardiologist testified that the lifting of the objects "certainly could have precipitated and probably did precipitate the [myocardial] incident," and that the lifting "certainly appear[ed]" to be the only occurrence precipitating the heart attack. *Id.* at 73. A WCJ and the Board concluded that such testimony was equivocal; this Court reversed. *Id.* at 71. We explained that, while the above statements themselves did appear to render the testimony equivocal, "a review of [the cardiologist's] testimony as a whole does not support such a conclusion." *Id.* at 72.

Instantly, Employer maintains that Dr. Hacken's report "fell woefully short" of the standards required for unequivocal testimony. In support, Employer calls attention to this statement from the report: "I cannot definitively state a cause of [Claimant's left] shoulder pain as this may be non-traumatic age-related tearing versus work related due to her repetitive work activities." Employer's Br. at 20

13

(citing Hacken Report at 2 (unpaginated)). Employer also argues that Dr. Hacken was also equivocal with regard to the condition of Claimant's right shoulder:

> I also suspect that she has a likely chronic massive right shoulder rotator cuff tear contributing to her right shoulder pain. Again, she felt that her work contributed to her symptoms but without any specific injury, I am unable to confirm that her shoulder pain is definitively due to a work-related injury versus just age-related rotator cuff tears over the years.

*Id.* In Employer's view, such language is "ambivalent" because it fails to assert that "a particular cause is more like than another." *Id.* In order to cure the defects in her report, Employer argues, Dr. Hacken could have studied medical records to determine "Claimant's pre-injury baseline" or to provide a statement "*to a reasonable degree of medical certainty*, that Claimant's injuries were work-related." *Id.* at 20-21 (emphasis in original). Dr. Hacken's failure to do so rendered her opinions equivocal as a matter of law, Employer concludes.

We reject Employer's arguments, as they depend on the cherry-picking of certain phrases from Dr. Hacken's report. Significantly, the extracts chosen by Employer both address the question of the *ultimate cause* of Claimant's shoulder ailments. Dr. Hacken's opinions were not offered to resolve that issue, but rather, to resolve the issue of whether Claimant sustained a work-related *aggravation* of an existing injury. On that question, Dr. Hacken's opinion is not ambivalent: "I do believe that her repetitive work has contributed to her pain and played a role in [the] symptomatic worsening of her symptoms as she states that she is working with her arms near chest level which would involve activation of her rotator cuff." Hacken Report at 2 (unpaginated). Dr. Hacken subsequently reiterated that Claimant's work "likely contributed to the worsening of her pain with regards to her current symptoms and repetitive nature working at her reported chest high level which does involve shoulder abduction and use of the rotator cuff." *Id.* at 2-3 (unpaginated). As

14

we explained in *Bemis*, the mere occurrence of words such as "likely" does not discredit a medical expert whose opinions, read as a whole, are unequivocal.

For the foregoing reasons, we see no error in the WCJ's finding that Dr. Hacken's written report constituted competent medical evidence.

### B. Claimant's Causation Evidence

Next, we address Employer's argument that the WCJ's finding of a work-related injury was unsupported by substantial evidence. It is well settled that an employer is liable for an employee's disability when that disability is caused by a combination of work-related and non-work-related factors, so long as the work-related cause is a substantial contributing factor to the disability. *Gumm v. Workers' Comp. Appeal Bd. (Steel)*, 942 A.2d 222, 230 (Pa. Cmwlth. 2008). This Court will reject a medical opinion as insufficient where it shows that the claimant's work only contributed minimally to the disability, rather than the material contribution required by this test. *Pokita v. Workmen's Comp. Appeal Bd. (US Air)*, 639 A.2d 1310, 1312 (Pa. Cmwlth. 1994). However, a medical expert need not "use magic words such as 'substantial contributing factor,' [or] 'materially contributed' . . . . It is only necessary that the doctor's testimony permit a valid inference that such causation was present." *Thomas Lindstrom Co. v. Workers' Comp. Appeal Bd. (Braun)*, 992 A.2d 961, 967 (Pa. Cmwlth. 2010).

In support of its position, Employer cites this Court's holding in *Chicoine v. Workmen's Compensation Appeal Board (Transit Management Services)*, 633 A.2d 658 (Pa. Cmwlth. 1993). In *Chicoine*, the claimant widow's late husband developed staph pneumonia while working as a truck driver. *Id.* Asked during a deposition whether the decedent's work was a substantial contributing factor in the decedent's death, the claimant's medical expert replied, "I don't know if I would say it would

15

be a substantial contributing factor. Certainly, it was a contributing factor in the progression of the disease which did lead to his death, yes." *Id.* at 660. We affirmed the WCJ's denial of the claim petition, explaining that, although the medical expert "unequivocally stated that the decedent's continued work was a contributing factor, he declined to characterize it as a substantial contributing factor." *Id*. at 662. Thus, we held that the testimony "was insufficient as a matter of law to sustain the claimant's burden of proof." *Id.*

Instantly, Employer argues that Claimant has failed to meet her burden under *Chicoine* "to show that her work duties were a *substantial* contributing factor in causing her *injury*, and not merely that her shoulders hurt while she was working." Employer's Br. at 24 (emphasis in original). Employer observes that "Dr. Hacken does not ever state that work was a substantial contributing factor in causing Claimant's injury," and argues that she "merely expressed her opinion that Claimant's occupation 'contributed' to Claimant's 'symptoms.'" *Id.* (citing Hacken Report at 2 (unpaginated)). In addition, Employer points out that the WCJ failed to include the word "substantial" in his decision. Employer's Br. at 26.

Employer's arguments are unpersuasive. As explained above, this Court does not accord a talismanic significance to such words as "substantial contributing factor" when reviewing medical opinions. Rather, we only require that the opinion permits a valid inference of causation. In this instance, Dr. Hacken carefully described the connection between Claimant's frequent overhead reaching and her injury and need for surgery. Thus, the WCJ drew a reasonable inference that Claimant's work activities contributed substantially to her disability. *Chicoine* is therefore inapposite, as the medical expert in that case specifically ruled out the possibility that the decedent's work was a substantial factor, which precluded the

16

required inference from being reasonably drawn. We also disagree that the WCJ's omission of the word "substantial" is legally erroneous, as the finding of a substantial contributing factor can be easily inferred from the context of his opinion.[8]

Next, we address Employer's argument that the WCJ's finding of an aggravation injury was unsupported by substantial evidence. It is well settled that a work-related aggravation of a non-work-related preexisting condition is an "injury" within the meaning of the Act. *Vazquez v. Workmen's Comp. Appeal Bd. (Masonite Corp.)*, 687 A.2d 66, 69 (Pa. Cmwlth. 1996). In order to demonstrate that an aggravation has occurred, the claimant must demonstrate that the intervening incident materially contributed to the disability. *Pittsburgh Steelers, Inc. v. Workers' Comp. Appeal Bd. (Williams)*, 814 A.2d 788, 793 (Pa. Cmwlth. 2002). Where the causal relationship between a work incident and a disabling injury is not obvious, unequivocal medical evidence is necessary to establish it. *Jeannette Dist. Mem'l Hosp. v. Workmen's Comp. Appeal Bd. (Mesich)*, 668 A.2d 249 (Pa. Cmwlth. 1995). Whether or not the intervening incident materially contributed to the disability is a question of fact for the WCJ. *Williams*, 814 A.2d at 793; *see also Corcoran v. Workers' Comp. Appeal Bd. (Capital Cities/Times Leader)*, 725 A.2d 868, 872 (Pa. Cmwlth. 1999) (explaining that the "critical questions of causation and disability" are "within the exclusive province of the WCJ to resolve").

Instantly, Employer maintains that the WCJ's finding of a work-related aggravation injury constitutes an improper "medical diagnosis." Employer's Br. at 29. Employer explains that such phrases in the WCJ's opinion as "*aggravation* of a left shoulder massive rotator cuff tear" and "*aggravation* of [Claimant's] chronic

---

[8] To the extent that the omission of the word "substantial" constitutes legal error, we regard such error as harmless, given our conclusion (discussed below) that the WCJ's finding of an aggravation injury was proper.

massive right rotator cuff tear" are unfounded, given that "Dr. Hacken did not diagnose Claimant with any aggravation injuries." *Id.* at 28-29 (citing WCJ Decision, F.F. No. 16(c)). To the contrary, Employer argues, Dr. Hacken substantiated nothing more than the occurrence of pain in Claimant's shoulders while working, which itself is insufficient to establish work-related aggravation. Employer also takes issue with the WCJ's order to pay for Claimant's treatment, given that Dr. Hacken's report "is devoid of any opinion regarding the causal relationship of the surgery to work." *Id.* at 29-30.

Employer's arguments are, again, unpersuasive. The notion that an aggravation injury is a medical diagnosis, as though requiring a clinician's express declaration before being accepted by factfinder, is lacking in legal foundation. As explained above, this Court has consistently regarded the question of whether a work-related aggravation has occurred as one of fact, well within the WCJ's purview. While our case law does require unequivocal medical evidence in instances where the causal connection is not obvious, it is only necessary that the evidence permit "a valid inference" that the requisite causal relationship was present. *Braun*, 992 A.2d at 967.

Following his examination of Dr. Hacken's "narrative report and her medical records as a whole," the WCJ determined that Claimant's work duties "aggravated [her] underlying shoulder condition such that Claimant required surgery and restrictions for her left shoulder and continued treatment for her right shoulder." WCJ Decision, F.F. No. 16(c). Such an inference may be reasonably drawn from Dr. Hacken's description of how Claimant's repeated "activation of her rotator cuff" led to the "symptomatic worsening of her symptoms." Hacken Report at 2 (unpaginated). Since the WCJ's finding of a work-related aggravation in Claimant's

condition finds adequate support in the record, we see no legal error in his conclusions.

## IV. Conclusion

Contrary to Employer's arguments, the report authored by Dr. Hacken is neither incompetent nor equivocal, and may therefore provide the foundation for the WCJ's decision. It is well settled that our appellate role in a workers' compensation case is not to reweigh the evidence, but simply to determine whether the WCJ's findings have the appropriate measure of support in the record. *Elk Mountain Ski Resort, Inc. v. Workers' Comp. Appeal Bd. (Tietz, deceased)*, 114 A.3d 27, 33 n.5 (Pa. Cmwlth. 2015). Since the WCJ's factual findings in this case constituted a proper exercise of his discretion, we affirm the Board.

ELLEN CEISLER, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Giorgi Global Holdings, Inc., :
                Petitioner :
                 :
      v. : No. 548 C.D. 2023
                 :
Edy Garcia (Workers' Compensation :
Appeal Board), :
              Respondent :

## **O R D E R**

AND NOW, this 5th day of June, 2024, the order of the Workers' Compensation Appeal Board in the above-captioned matter, dated May 23, 2023, is hereby AFFIRMED.

 

                                _____

                                ELLEN CEISLER, Judge