633 A.2d 658

Norman CHICOINE, Dec'd, Lorraine Chicoine, Widow, Petitioner,

v.

WORKMEN'S COMPENSATION APPEAL BOARD (TRANSIT MANAGEMENT SERVICES), Respondent,

TRANSIT MANAGEMENT SERVICES, Petitioner,

v.

WORKMEN'S COMPENSATION APPEAL BOARD (Norman CHICOINE, Dec'd, Lorraine Chicoine, Widow), Respondent.

Commonwealth Court of Pennsylvania.

Submitted June 11, 1993.

Decided Oct. 27, 1993.

Reconsideration Denied Dec. 20, 1993.

Michael F. Brown, for petitioner Chicoine.

Charles F. McElwee, for respondent/petitioner Transit Management Services.

Before COLINS and FRIEDMAN, JJ., and LORD, Senior Judge.

FRIEDMAN, Judge.

Lorraine Chicoine, the claimant, and Transit Management Services, Inc. (Employer) appeal an order of the Workmen's Compensation Appeal Board (Board) which affirmed an order of a referee[1] denying Chicoine's fatal claim petition. We affirm the Board's order and quash Employer's appeal.

The claimant is the widow of Norman Chicoine, the decedent, who at the time of his death was employed as a truck driver by Employer, a New Jersey corporation. In February or March of 1989, the decedent became ill, suffering from flu-like symptoms. The decedent continued to work, believing that he was merely suffering from a cold. Rather than improving, however, the decedent's condition worsened. While making a delivery for Employer in Texas, the decedent called his wife and told her that he was spitting blood. Immediately following the return trip to his home in Carlisle, Pennsylvania, the decedent was immediately admitted to the hospital. He died on April 30, 1989 without ever leaving the hospital.

The claimant filed a fatal claim petition, alleging that the decedent's demise was work-related. By a letter to the referee dated October 17, 1989, Employer denied the allegations of the petition; however, Employer never filed an answer on the form entitled "DEFENDANT'S ANSWER TO CLAIM PETITION UNDER PENNSYLVANIA WORKMEN'S COMPENSATION ACT."[2]

1. Under recent amendments to the Workmen's Compensation Act, effective August 31, 1993, referees are now referred to as Worker's Compensation Judges. Because this case was heard before the effective date of these amendments, we shall still refer to the referee as such.

2. Although the record is not entirely clear, it appears that the State Workmen's Insurance Fund (SWIF) filed a timely answer on October 16, 1989, denying all allegations for lack of knowledge. At the time, SWIF was the workmen's compensation carrier for a Pennsylvania corporation having the same name as Employer. All documents, however, were mailed to Employer, which waited until October of 1990 to notify its insurance carrier, Greater New York Insurance Company. When Employer's carrier became involved in the litigation, it asked that it be permitted to adopt SWIF's answer as its own. Although the referee denied this request, he did permit Employer to put on evidence.

In support of her petition, the claimant presented, *inter alia*, the testimony of Bruce J. Berman, M.D., the decedent's treating physician at the time of his last hospitalization. Dr. Berman testified that at the time of admission into the hospital, the decedent was suffering from bilateral pneumonia. He described the futile attempts to treat the decedent. When asked about the immediate cause of the decedent's death, Dr. Berman responded:

That was intractable cardiac dysrhythmia and cardiac arrest secondary to hypoxemia because of tension pneumothorax. He had a tracheostomy put in for long term ventilator management. He was going to be on a respirator for a long time, and upon changing the tracheostomy, a tension pneumothorax developed which compressed the lung and caused cardiac rhythm that was unable to be restored to one that was compatible with life.

This was all the direct result of the adult respiratory distress syndrome which resulted from the staph pneumonia.

(Deposition of Dr. Berman, 6/4/91, p. 10.) Dr. Berman went on to explain adult respiratory distress syndrome.

That's a condition that's as a result of other underlying conditions, but it's a condition where the lungs get so severely damaged that they leak fluid and other elements within the lung substance, itself, and its very difficult to A, survive it and B, treat it.

It's always caused by an underlying factor. In this case, it was staph pneumonia.

(*Id.*, p. 11.) Dr. Berman clearly stated that the underlying pneumonia was *not* work-related, but he testified *that the decedent aggravated the pneumonia by continuing to work without seeking treatment.* The following exchange occurred on direct examination.

Q. Dr. Berman, do you have an opinion, again, within a reasonable degree of medical certainty, as to whether such a

For reasons that will be explained later, we need not discuss all of the ramifications of this procedural problem in order to resolve this appeal.

situation of continuing to work as a truck driver as described before during a period of illness involving bilateral pneumonia, would be a substantial contributing factor leading to the individual's death?

    A. *I don't know if I would say it would be a substantial contributing factor.* Certainly, it was a contributing factor in the progression of the disease which did lead to his death, yes.

(*Id.,* p. 16.)

Employer presented the testimony of Dr. Philip Benyo, who offered the opinion that the decedent's employment had no bearing on either his hospitalization or death. Rather, Dr. Benyo offered the opinion that the decedent was suffering from alcoholism, anemia, diabetes, emphysema and low protein in the blood. Dr. Benyo testified that all of these factors contributed to the progression of the pneumonia in that they reduced the ability of decedent's body to fight infections. Employer also presented the testimony of Richard Cressman, its recruiter, and Kenneth Bruno, it's east coast dispatcher during the time relevant to these proceedings. Cressman testified that the decedent had completed an application for employment at Employer's office in New Jersey in May of 1988. The day after completing the application, the decedent was given a physical examination, again in New Jersey. After the decedent passed the physical, Employer offered the decedent a job which he immediately accepted. Bruno testified that Employer had no offices in Pennsylvania at the time of the decedent's death. Bruno also testified that all assignments were dispatched from Employer's New Jersey headquarters. Employer owned the truck which the decedent drove, and that truck was registered in New Jersey. Employer issued its paychecks from New Jersey. Further, Employer did all maintenance on the trucks at its headquarters. Bruno also testified that Employer required the decedent to report to the New Jersey office for monthly safety meetings.

The referee denied the claim petition, concluding that the claimant had failed to prove that the decedent had suffered any "injury" as that term is defined in section 301(c) of The

Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 411.[3] As the referee explained:

This was not filed under the disease section of the Act and a doctor for the claimant specifically denied any higher incidence of the disease or any connection between the pneumonia and work per se. To me this is not the type of pre-existing condition that is aggravated by work. Rather, the injury in this case is the pneumonia caused by the infection. The non-treatment worsened the condition. Not treating an injury such as a back injury or a cut may result in increased disability. Diabetics who are injured slightly may have an amputation because of poor healing. However, *there must be an injury to start the process which was work related. Here, I do not feel the injury part of the Act was established.*

(Referee's decision and order, 1/31/92, p. 7) (emphasis added). The referee also concluded that he did not have jurisdiction. Both the claimant and Employer appealed to the Board,[4] which affirmed, stating in its opinion:

It is clear from the Referee's findings that he accepted the opinion of Dr. Benyo, that decedent's disease was neither caused nor necessarily aggravated by [the decedent's] work activities, over the opinion of [the claimant's] medical witness, Dr. Berman, who opined that decedent's continuing work activities contributed to the progression of the lung disease.

**3.** That section provides in pertinent part:

(1) The terms 'injury' and 'personal injury' as used in this act, shall be construed to mean an injury to an employee, *regardless of his previous physical condition,* arising in the course of his employment and related thereto, and such disease or infection as naturally results from the injury or is aggravated, reactivated or accelerated by the injury; and whenever death is mentioned as a cause for compensation under this act, it shall mean only death resulting from such injury and its resulting effects.... (Emphasis added.)

**4.** The Employer appealed, alleging that the referee had erred in deciding that its answer was late and that the Employer was precluded from adopting the answer which had been filed by SWIF.

(Opinion of the Board, 10/30/92, p. 3.) The Board thus concluded that the referee had decided the case on credibility grounds which were unreviewable on appeal. The Board also denied Employer's appeal, holding that the disposition of the claimant's appeal rendered Employer's appeal moot. Both the claimant and Employer appealed to this court.[5]

The claimant first argues that both the referee and the Board erred in concluding that she failed to establish that the decedent's death was compensable. We cannot accept the claimant's argument and, thus, affirm the Board.

■ Before proceeding, however, we must note that the Board's analysis of the referee's decision and order on the basis of credibility cannot be the basis for affirming the Board's order.[6] Our review of the referee's decision and order convinces us that the referee did not decide the case on credibility grounds as the referee made no explicit credibility findings in this regard. Rather, we believe the referee's decision is premised upon the conclusion that the claimant had failed to prove that her husband suffered an "injury" as that term is defined in section 301(c) of the Act. As the following discussion will show, the claimant did present evidence which, *if believed*, would have met her burden of proving that the decedent suffered an injury. For that reason, we must also question the referee's conclusion that because the decedent did not suffer an injury, there was no jurisdiction under the Act. In *Pawlosky v. Workmen's Compensation Appeal Board (Latrobe Brewing Company)*, 514 Pa. 450, 525 A.2d 1204

5. Our scope of review is limited to determining if any party's constitutional rights were violated, if any errors of law were committed and ascertaining that all necessary findings of fact are supported by substantial evidence. 2 Pa.C.S. § 704; *Arnott v. Workmen's Compensation Appeal Board (Sheedy Ford Sales, Inc.)*, 156 Pa.Commonwealth Ct. 167, 627 A.2d 808 (1993).

6. However, Board's erroneous reasoning does not prevent us from affirming its order so long as the proper reason for our affirmance is clear from the record. *Gregorious v. Workmen's Compensation Appeal Board (European Health Spas)*, 87 Pa.Commonwealth Ct. 86, 486 A.2d 564 (1985); *City of Philadelphia v. Pennrose Management Co.*, 142 Pa.Commonwealth Ct. 627, 598 A.2d 105 (1991), *petition for allowance of appeal denied*, 530 Pa. 661, 609 A.2d 169 (1992).

(1987), the Supreme Court held that a job related aggravation of a non work-related pre-existing disease which rendered the employee disabled was an "injury" under section 301(c) of the Act. The Court stated, "Specifically included in the new statutory conception of 'injury' is the job related aggravation, reactivation or acceleration of a pre-existing disease, *even if the underlying disease was not caused by a work-related injury.*" *Pawlosky,* 514 Pa. at 458, 525 A.2d at 1209 (emphasis added). Dr. Berman, the claimant's medical expert, testified that by continuing to work, the decedent aggravated the underlying non work-related pneumonia. Furthermore, by driving a portion of the time in Pennsylvania, the decedent arguably aggravating his pre-existing condition within this Commonwealth. Section 101 of the Act provides that the Act "shall apply *to all injuries occurring within this Commonwealth,* irrespective of the place where the contract of hiring was made, renewed, or extended, and extraterritorially as provided by section 305.2." 77 P.S. § 1 (emphasis added). Thus, if the referee believed the testimony of Dr. Berman, the claimant would have established a Pennsylvania injury, thereby conferring jurisdiction upon the Pennsylvania compensation authorities. The referee made no findings concerning the credibility of Dr. Berman. Under most circumstances, a remand to the referee for a determination on Dr. Berman's credibility would be warranted. Here, however, such action is unnecessary because even if Dr. Berman's testimony is believed, it is insufficient to satisfy the claimant's burden of proving that the decedent's death resulted from the work-related injury.

In *McCloskey v. Workmen's Compensation Appeal Board (J.H. France Refractories, Inc.),* 501 Pa. 93, 460 A.2d 237 (1983), the employee died as the result of a heart attack; at the time of his death, he was also suffering from work-related silicosis, a specifically enumerated occupational disease under section 108 of The Pennsylvania Occupational Disease Act, Act of June 21, 1939, P.L. 566, *as amended,* 77 P.S. § 1208(k). The employee's widow attempted to prove that the death was compensable by offering medical evidence that the silicosis

*may* have been a cause of death. A plurality of the Supreme Court held that the widow had failed to meet her burden of proof. As the plurality explained:

> Therefore, we hold today that where there are multiple causes of death and the immediate cause was non-compensable, the requirements of § 301(c)(2) may be met by a showing with unequivocal medical evidence that the deceased suffered from an occupational disease and *that it was a substantial contributing factor among the secondary causes in bringing about death.* Proving merely, as [the widow] contends, that the disease was or may have been a contributing factor is inadequate.

*McCloskey,* 501 Pa. at 101, 460 A.2d at 241 (emphasis added). While *McCloskey* represented the viewpoint of only a plurality of the Supreme Court, we have adopted the language and applied it in similar cases in this court. *Royal Oaks Machine Shop v. Workmen's Compensation Appeal Board (Bubenko),* 143 Pa.Commonwealth Ct. 180, 600 A.2d 1305 (1991); *Harbison Walker Refractories v. Workmen's Compensation Appeal Board (Drake),* 125 Pa.Commonwealth Ct. 456, 557 A.2d 460 (1989). We have also extended the concept of "a substantial contributing factor" to cases involving "injuries" as opposed to occupational diseases. In *Henry v. Workmen's Compensation Appeal Board (Mayer Pollack Corp.),* 118 Pa.Commonwealth Ct. 360, 545 A.2d 438 (1988), the employee suffered work-related lead poisoning. He later died from arteriosclerotic heart disease and complications resulting from chronic alcoholism. His widow filed a fatal claim petition, attempting to prove that her husband's alcohol abuse stemmed from depression resulting from his work related lead poisoning. The employer presented the testimony of a medical expert who offered the opinion that the decedent's alcoholism long predated the lead poisoning. The referee accepted that testimony and denied benefits. On appeal, the claimant argued that it was error to apply the substantial contributing factor test of *McCloskey* to a non occupational disease case. We rejected this argument and stated that "[w]e are unpersuaded that

there is a need for a different standard in injury cases."
*Henry,* 118 Pa.Commonwealth Ct. at 363, 545 A.2d at 440.

■ As previously mentioned, Dr. Berman was specifically asked by the claimant's counsel if the aggravation of pneumonia from continuing to work was a *substantial contributing factor* leading to decedent's demise. Although Dr. Berman unequivocally stated that the decedent's continued work was a contributing factor, he declined to characterize it as a *substantial* contributing factor. Under the authorities cited above, we have no choice but to hold that Dr. Berman's testimony was insufficient as a matter of law to sustain the claimant's burden of proof on her fatal claim petition. Therefore, it would be futile to remand for a determination on Dr. Berman's credibility on the question of whether an "injury" occurred in Pennsylvania when the claimant cannot recover in any case. Accordingly, although the reasoning of the referee and the Board was erroneous, we affirm the order dismissing the claimant's petition. *Gregorious.*

■ Employer argues in its appeal that the referee erred in concluding that its answer was untimely and that Employer could not adopt the timely answer filed by SWIF. We cannot reach these questions, however, because we must quash Employer's appeal. Only "aggrieved" parties may appeal, Pa. R.A.P. 501, and a party who prevails simply is not an aggrieved party and has no standing to appeal. *Mahanoy Area School District v. Budwash,* 146 Pa.Commonwealth Ct. 72, 604 A.2d 1156 (1992); *Appeal of U.S. Aluminum Corporation of Pennsylvania,* 123 Pa.Commonwealth Ct. 376, 553 A.2d 1046 (1989).

## ORDER

### No. 2517 C.D.1992.

AND NOW, this 27th day of October, 1993, the October 3, 1992 order of the Workmen's Compensation Appeal Board at No. A92–0394 is affirmed.

## ORDER

No. 2601 C.D.1992.

AND NOW, this 27th day of October, 1993, the appeal in the above captioned matter is quashed.