# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jim's Commercial Service,      :
         Petitioner       :
      :
     v.           :    No. 1018 C.D. 2025
      :
Anthony DiJoseph (Workers'      :
Compensation Appeal Board),      :
         Respondent    :    Argued: May 12, 2026


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE MATTHEW S. WOLF, Judge


## OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE WOLF                                FILED: June 11, 2026

Jim's Commercial Service (Employer) petitions this Court for review of a July 22, 2025 order of the Workers' Compensation Appeal Board (Board), which affirmed a decision by workers' compensation judge (WCJ) Joseph Hakun granting a petition for disability benefits (Claim Petition) submitted by Anthony DiJoseph (Claimant). Employer argues that WCJ Hakun failed to make essential findings of fact on the issue of whether Claimant's injuries were work-related, relied on equivocal testimony by Claimant's medical experts, and capriciously disregarded credited, unrefuted testimony by Employer's witnesses. Because WCJ Hakun's findings are supported by substantial evidence of record, we affirm.

## I. Background

The instant dispute began with the filing of the Claim Petition on February 14, 2023. Certified Record (C.R.), Item No. 2. Therein, Claimant alleged that his

Dupuytren's contracture and plantar fibromatosis were "caused and/or aggravated" by his work with Employer and sought disability benefits as a result. *Id.* Employer filed a timely answer asserting that it was not given adequate notice, that the claim was time-barred, and that Claimant's conditions were "not causally related to employment." *Id.*, Item No. 4. Claimant followed up with a timely petition for penalties (Penalty Petition), in which he alleged that "Employer failed to perform any reasonable investigation into the injury"; Employer filed another timely answer denying the allegation. *Id.*, Item Nos. 5, 7.

In support of the Claim Petition, Claimant offered his own deposition and hearing testimony and the deposition testimony of Dr. Albert Iannucci, a podiatrist, and Dr. Mark Paiste, an orthopedic surgeon. In its defense, Employer presented the deposition testimony of Dr. Steven Boc, a foot surgeon, and Dr. Jack Abboudi, an orthopedic surgeon.

## A. Claimant's Evidence

### 1. Claimant Testimony

At a March 20, 2023 deposition, Claimant testified that he had worked for Employer as an HVAC technician from 1992 to 1997 and again from 2010 onwards. C.R., Item No. 18 (Claimant Dep.) at 6-7. Previous injuries included a surgically treated left rotator cuff tear in 2016 and a left shoulder operation circa 2018, the latter of which Claimant did not believe was work-related. *Id.* at 19-20. The symptoms of the conditions that eventually disabled Claimant surfaced in 2016, when he noticed a seemingly harmless lump in his hand. *Id.* at 10. Three years later, Claimant noticed that three fingers on his right hand and two on his left began to curl involuntarily, causing difficulty with gripping. *Id.* at 11-12. After he was diagnosed with Dupuytren's contracture, Claimant underwent separate surgeries on his left and

right hands in early 2020 and returned to full duty in April 2020. *Id.* at 30-31. Although Claimant was absent from work for an extended period, he did not file a workers' compensation claim alleging that the injury was work-related. *Id.* at 31.

In spite of the April 2020 operations, Claimant noticed a gradual re-emergence of symptoms in his hands, including pain from pressure on his palms. Claimant's Dep. at 13. Symptoms in his feet that resembled those in his hands soon followed as well as shoulder pain. *Id.* at 14. Claimant continued to work through the pain until January 5, 2023, when he found it no longer tolerable and called out from work. *Id.* at 26-27. Although Claimant did notify his supervisor that he would need to take a leave of absence or a reduced role at work, he never discussed a possible connection between the symptoms and his work. *Id.* at 34-35. Since leaving work, Claimant has managed to perform daily domestic tasks, though not without complications. *Id.* at 35-36. Consequently, at the time of the deposition, Claimant spent much of his days playing with—but not walking—his dogs. *Id.*

Testifying live before WCJ Hakun on October 25, 2023, Claimant reported that the lumps in his feet had grown numerous, larger, and more painful since his deposition. C.R., Item No. 16, 10/25/2023 Hr'g Tr. at 8-9. The pain, which Claimant likened to the feeling of "walking around with stones in [one's] shoes," prevented him from basic functions such as prolonged standing. *Id.* at 11. As for his hands, Claimant reported that he continued to encounter difficulty with gripping and other basic tasks but also that he was experiencing modest improvement with painkiller injections and physical therapy. *Id.* at 13.

**2. Dr. Iannucci Testimony**

Dr. Iannucci recalled at an April 11, 2023 deposition that he first saw Claimant on November 26, 2022, when he presented with lumps in both feet and a burning

3

sensation that had been present for several years. C.R., Item No. 19 (Iannucci Dep.) at 10-11. The physical examination of Claimant was unremarkable apart from lumps on both plantar fascia. *Id.* at 11. Dr. Iannucci immediately suspected that Claimant was suffering from plantar fibromatosis, and his suspicion was confirmed by a diagnostic ultrasound performed afterward. *Id.* at 12. That Claimant already underwent treatment for Dupuytren's contracture was no surprise to Dr. Iannucci, who found that the two conditions are highly comorbid. *Id.* at 20-21. Dr. Iannucci prescribed an over-the-counter anti-inflammatory gel and a prescription anti-hypertensive that is found to improve plantar fibromatosis symptoms. *Id.* at 13-14.

Concerning etiology, Dr. Iannucci believed within a reasonable degree of medical certainty that there was "a direct relationship" between Claimant's disability and his work activities. Ianucci Dep. at 23. Because Dupuytren's contraction and plantar fibromatosis were present in both of Claimant's hands and both of his feet, Dr. Iannucci believed that it occurred naturally rather than as the product of "an inciting incident." *Id.* at 32. Consequently, Dr. Iannucci did not believe that the relationship was one of direct causation. *Id.* at 25. Dr. Iannucci maintained that Claimant's work activity "exacerbated his symptoms," but did not believe that he could accurately quantify the extent to which those symptoms were the consequence of Claimant's work as opposed to pre-existing conditions. *Id.* at 33.

### 3. Dr. Paiste Testimony

At a May 30, 2023 deposition, Dr. Paiste recalled that he first treated Claimant on March 17, 2023, and has continued to do so on a monthly basis. C.R., Item No. 20 (Paiste Dep.) at 20-21. Over the course of their visits so far, Claimant's complaints included progressive stiffness in both hands, weakness, and contractions in the hands while working. *Id.* at 12. Following his initial examination of Claimant,

4

Dr. Paiste's diagnosis was of a "bilateral hand sprain," "overuse injury," progressive Dupuytren's contracture in both hands with post-traumatic aggravation, and accompanying pain, stiffness, and weakness. *Id.* at 18. Dr. Paiste explained that Dupuytren's contracture is caused by "thickened growths . . . in the palm of the hands" that hinder hand function by preventing the fingers from being straightened. *Id.* at 19-20. Even simple activities such as retrieval of one's wallet or cell phone from a pocket can become extremely difficult with the condition, according to Dr. Paiste. *Id.* at 20. Because of the physical exam's findings, Dr. Paiste was in agreement that Claimant was unable to return to work. *Id.* at 20. Dr. Paiste also noted that the prognosis for Dupuytren's is bleak, as there is no known cure and symptoms inevitably recur even after successful surgery. *Id.* at 39.

Asked whether he had an opinion "within a reasonable degree of medical certainty" whether his diagnoses were "aggravated by Claimant's work activity," Dr. Paiste responded: "Yes, in my opinion his bilateral hand conditions were aggravated." Paiste Dep. at 31. While acknowledging that Dupuytren's was most likely caused by a genetic predisposition, Dr. Paiste maintained that work duties can be "an aggravating and exacerbating factor." *Id.* at 41. Dr. Paiste did believe, however, that the bilateral hand sprain he detected in Claimant's soft tissue structures were the result of stress applied to hands that are already suffering from Dupuytren's. *Id.* at 38.

### B. Employer's Evidence

### 1. Dr. Boc Testimony

At a July 3, 2023 deposition, Dr. Boc recalled that he performed an independent medical examination (IME) of Claimant on May 17, 2023. C.R., Item No 28 (Boc Dep.) at 8-9. Discussing medical history at the beginning of the

5

appointment, Claimant told Dr. Boc that he had been out of work since January 5, 2023, because of foot pain and Dupuytren's in both hands. *Id.* at 9. Claimant did not recall any traumatic work incident that would obviously have caused the condition. *Id.* at 30-31. During the physical examination, Dr. Boc found bilateral fibromas in the mid-arch portions of the plantar fascia. *Id.* at 14-16. Due to that finding, Dr. Boc agreed that Claimant suffered from plantar fibromatosis, which he described as a "primarily congenital" condition caused by nodules of varying hardness on the plantar fascia. *Id.* at 11.

Unlike Drs. Iannucci and Paiste, Dr. Boc did not believe that Claimant's plantar fibromatosis or his Dupuytren's were aggravated by his work duties. Boc Dep. at 20-21. Dr. Boc explained that, when those conditions are worsened by wear and overwork, one would expect to find redness and swelling; yet, neither was present in his examination of Claimant. *Id.* at 21. Regarding prognosis, Dr. Boc believed within a reasonable degree of medical certainty that Claimant could return to work without restrictions. *Id.* at 22. Dr. Boc did recommend that Claimant continue to treat his pain symptoms with topical medication and with orthotic inserts for his shoes. *Id.* at 24-25.

### 2. Dr. Abboudi Testimony

At an October 3, 2023 deposition, Dr. Abboudi recalled that he performed a second IME of Claimant on June 20, 2023. C.R., Item No. 29 (Abboudi Dep.) at 10-11. Claimant related to Dr. Abboudi in the initial phase of the examination that he had been out of work since January 5, 2023, and that there was no specific incident precipitating his work absence. *Id.* at 16-17. During the physical examination, Dr. Abboudi observed symptoms consistent with someone suffering from recurrent Dupuytren's but observed no symptoms of hand sprain. *Id.* at 38. Dr. Abboudi

explained that, notwithstanding Dr. Paiste's diagnosis, sprain would be associated with tendon or ligament dysfunction, which was not present during the June 20, 2023 IME. *Id.* at 52.

Because of the aggressive nature of Claimant's symptoms and his relatively young age at the time of onset (in his forties), Dr. Abboudi concluded that he suffered from "a well-described subcategory" of Dupuytren's, which he referred to as Dupuytren's diathesis. Abboudi Dep. at 22. Asked to discuss the etiology of an aggressive Dupuytren's case such as Claimant's, Dr. Abboudi opined that it was entirely a genetic condition with "no relationship to occupation or manual activities." *Id.* at 25. Dr. Abboudi explained that symptoms will be detected in people engaged in "all different type[s] of occupations," or no occupations. *Id.* at 64. Asked on cross-examination about a handful of studies that may point to work-related causes, Dr. Abboudi maintained that the preponderance of the scholarly literature strongly favors the conclusion that Dupuytren's is inherited. *Id.* at 67-68.

### C. WCJ Decision

In an April 16, 2024 decision, WCJ Hakun found that Claimant met his burden of proof on the Claim Petition and granted disability benefits. C.R., Item No. 8 (WCJ Decision), Conclusion of Law (C.L.) No. 1. WCJ Hakun found that neither Dupuytren's nor plantar fibromatosis was "caused by any work-related condition" but that those existing conditions were "impacted by Claimant's work activities." *Id.*, Finding of Fact (F.F.) No. 4. Owing to Claimant's status as a long-time employee and his "strong work ethic," his testimony was deemed "credible and persuasive" on the subject of his continued disability, and supported the finding that Claimant remained disabled. *Id.*, F.F. No. 11. Because of the lack of a specific work event and the debated etiology of Claimant's conditions, however, WCJ Hakun

7

found that Employer engaged in a reasonable contest and denied the Penalty Petition. *Id.*, F.F. No. 13.

Regarding the medical experts, WCJ Hakun accepted the testimony of Drs. Iannucci and Paiste as both credible and persuasive. WCJ Decision, F.F. No. 5. WCJ Hakun explained that Dr. Iannucci's testimony was credible because he opined that Claimant's plantar fibromatosis was "impacted by Claimant's work activities." *Id.*, F.F. No. 6. Dr. Paiste's opinions were also found credible because of his discussion of "Claimant's work activities" as an HVAC technician "who had to use his hands continuously throughout the day" by "gripping and grasping tools and equipment and [by] lifting various objects." *Id.*, F.F. No. 10.

In contrast to Claimant's medical experts, WCJ Hakun found Drs. Boc and Abboudi to be neither credible nor persuasive. WCJ Hakun explained that Dr. Iannucci is "a treating physician" whose opinions were "balanced" in that they took into account the relationship between Claimant's foot condition and his work activities, and that Dr. Boc's testimony was therefore rejected where it conflicted with Dr. Iannucci's. *Id.*, F.F. No. 7. Dr. Abboudi's testimony was also rejected where it conflicted with Claimant's experts, a finding that WCJ Hakun explained simply by quoting from Dr. Paiste's diagnosis in his own deposition testimony. *Id.*, F.F. No. 8.

Employer appealed to the Board, which affirmed without dissent. C.R., Item No. 11. This appeal followed.[1]

---

[1] This Court's review is limited to determining whether the necessary findings of fact were supported by substantial evidence, whether constitutional rights were violated, or whether errors of law were committed. *Borough of Heidelberg v. Workers' Comp. Appeal Bd. (Selva)*, 928 A.2d 1006, 1009 (Pa. 2007). Where the issue presented involves a question of law, our standard of review is de novo and our scope of review is plenary. *Id.*

## II. Discussion

Included within the Workers' Compensation Act's definition of "injury" is the work-related aggravation of a condition that predated the claimant's employment. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 411(1); *see also Knapp v. Workmen's Comp. Appeal Bd. (GTE)*, 671 A.2d 258, 261 n.2 (Pa. Cmwlth. 1996). Thus, benefits may be awarded where the preexisting condition is aggravated or accelerated by a work-related injury, even if the underlying disease or condition was not caused by a work incident. *Lewiston Hosp. v. Workmen's Comp. Appeal Bd. (Kuhns)*, 683 A.2d 702, 707 (Pa. Cmwlth. 1996). A claimant seeking compensation for a so-called aggravation injury must prove that (1) the aggravation arose within the course of employment and (2) the aggravation was related to that employment. *Id.* at 261. Where there is no obvious connection between the work and the aggravation, unequivocal medical evidence on the issue is required. *Dorsey v. Workers' Comp. Appeal Bd. (Crossing Const. Co.)*, 893 A.2d 191, 195 n.5 (Pa. Cmwlth. 2006).

Instantly, Employer raises three arguments on appeal. First, Employer contends that WCJ Hakun failed to make essential findings of fact on the key issue in this case: causation. Employer further contends that Claimant failed to present unequivocal medical testimony that his work duties were causally related to his physical condition. Finally, Employer argues that WCJ Hakun capriciously disregarded the "unrefuted and credited testimony" of Employer's medical experts when ruling in Claimant's favor.

### A. WCJ's Factual Findings

First, we address Employer's argument that WCJ Hakun committed an error of law by failing to make key findings of fact on the question of causation. Employer

contends that the proper inquiry in this case is not whether Claimant suffered an aggravation of a preexisting condition but whether "occupational factors [were] a 'substantial contributing factor'" to his disability. *Id.* at 26 (citing *Bell v. Workmen's Comp. Appeal Bd. (Gateway Coal Co.)*, 545 A.2d 430, 432 (Pa. Cmwlth. 1988)). It is well settled that an employer is liable for an employee's disability when that disability is caused by a combination of work-related and non-work-related factors, so long as the work-related cause is a substantial contributing factor to the disability. *Gumm v. Workers' Comp. Appeal Bd. (Steel)*, 942 A.2d 222, 230 (Pa. Cmwlth. 2008). This Court has held that the "'substantial contributing factor' causation test may be applied to disability cases where the disability is caused by both work-related and non[-]work-related causes." *Bell*, 545 A.2d at 433.

Employer contends that "all four medical experts—including Claimant's experts, Dr. Paiste and Dr. Iannucci—agreed that Claimant's work **did not cause** Claimant to develop Dupuytren's [] or plantar fibromatosis." Employer's Br. at 26 (emphasis in original). Consequently, Employer argues, the key question before WCJ Hakun was "whether work was a *substantial contributing factor* to Claimant's injury and disability." *Id.* at 27 (emphasis added). Employer further contends it is "likely that [WCJ Hakun] did not dare to address the 'substantial contributing factor' analysis because the evidentiary record is void" of evidence supporting such a conclusion. *Id.*

We disagree with Employer. The substantial contributing factor test is applied in cases where "*competing* causes for disability or death" are alleged. *Pa. State Univ. v. Workers' Comp. Appeal Bd. (Rabin, deceased)*, 53 A.3d 126, 133 (Pa. Cmwlth. 2012) (emphasis added). As the Board correctly noted, "only one cause for Claimant's disability, or loss of earnings, is alleged" in this matter; Employer "is

10

therefore mistaken in arguing that the substantial contributing factor test applies." Board Decision at 14. In the instant case, the medical experts are in overall agreement that Claimant's conditions are caused by non-work-related factors such as genetics. It is for precisely that reason, however, that Employer's contention misses the mark; because aggravating work conditions were alleged in this case, it is properly treated as an aggravation injury, and the substantial contributing factor test that this Court developed in *Bell* and its progeny is inapposite.

### B. Medical Testimony

Next, Employer contends that, even if WCJ Hakun made adequate findings in his decision, Claimant failed to present unequivocal medical testimony showing that his work duties substantially contributed to a definitive injury. Employer reasons that Dr. Iannucci's testimony was "insufficient as a matter of law" because even he acknowledged the "clearly significant non-occupational factors at play," such as heredity. Employer's Br. at 33. As for Dr. Paiste's testimony, Employer contends that it "was similarly insufficient as a matter of law to establish causation" because he merely stated that Claimant's "bilateral hand conditions *were aggravated.*" *Id.* at 35 (citing Paiste Dep. at 31) (emphasis added). Thus, WCJ Hakun's decision was "neither reasoned nor supported by substantial[,] competent evidence." *Id.*

In support of its contention, Employer cites this Court's holding in *Chicoine v. Workmen's Compensation Appeal Board (Transit Management Services)*, 633 A.2d 658 (Pa. Cmwlth. 1993). In *Chicoine*, the claimant widow's late husband developed staph pneumonia while working as a truck driver. *Id.* Asked during a deposition whether the decedent's work was a substantial contributing factor in the decedent's death, the claimant's medical expert offered the following response: "I don't know if I would say it would be a substantial contributing factor. Certainly, it

was a contributing factor in the progression of the disease which did lead to his death, yes." *Id*. at 660. Affirming the WCJ's denial of the claim petition, we explained that, although the medical expert "unequivocally stated that the decedent's continued work was a contributing factor, he declined to characterize it as a substantial contributing factor." *Id*. at 662. Thus, we held that the testimony "was insufficient as a matter of law to sustain the claimant's burden of proof." *Id*. Employer contends that Dr. Iannucci's testimony referring to "a direct relationship"[2] between work and disability is analogous to the equivocal testimony of the medical expert in *Chicoine*.

We are not persuaded by Employer's argument. At the outset, we must again point out that this Court's substantial contributing factor analysis is inappropriate where, as here, a claimant does not allege a work-related cause of an underlying condition but a work-related aggravation of that condition resulting in disability. Thus, *Chicoine* is legally and factually inapposite. In this instance, where a workplace connection was not obvious, Claimant's burden was to prove through unequivocal medical evidence that the "aggravation arose in the course of employment, and . . . was related to that employment." *Vazquez v. Workmen's Comp. Appeal Bd. (Masonite Corp.)*, 687 A.2d 66, 69 (Pa. Cmwlth. 1996).

Viewing Dr. Iannucci's and Dr. Paiste's testimony through the appropriate lens, it is readily apparent that they believed Claimant's work duties to have aggravated his Dupuytren's and plantar fibromatosis symptoms. Dr. Iannucci testified unequivocally that there was "a direct relationship" between Claimant's work duties and his disability and that the former "exacerbated" the latter. Iannucci Dep. at 35. In a similar vein, we reject the argument that Dr. Paiste's testimony was insufficient to support WCJ Hakun's findings. While Dr. Paiste used a passive voice

---

[2] *See* Iannucci Dep. at 23.

12

construction in stating that Claimant's "bilateral hand conditions were aggravated," this statement was Dr. Paiste's affirmative response to the question of whether he believed "within a reasonable degree of medical certainty" that the Dupuytren's, hand sprain, and plantar fibromatosis symptoms were "aggravated *by Claimant's work activity*." Paiste Dep. at 31 (emphasis added). Viewed within its context, Dr. Paiste's statement therefore is not equivocal.

## C. Capricious Disregard

Lastly, Employer contends that WCJ Hakun capriciously disregarded unrebutted, competent evidence in reaching his conclusions. This Court has explained that a WCJ engages in the capricious disregard of evidence when he "rejects uncontradicted evidence and makes findings or conclusions which have no rational basis in the evidence of record." *Acme Markets, Inc. v. Workmen's Comp. Appeal Bd. (Pilvalis)*, 597 A.2d 294, 297 (Pa. Cmwlth. 1991). In other words, the the factfinder's disregard of evidence is "capricious" if it is "evidence that a person of ordinary intelligence could not conceivably have avoided in reaching a particular result." *Bennett v. Unemployment Comp. Bd. of Rev.*, 33 A.3d 133, 137 n.3 (Pa. Cmwlth. 2011).

In support, Employer explains that WCJ Hakun "did not outright reject the testimony" of Employer's medical experts, but simply "accepted the opinions of Dr. Iannucci and Dr. Paiste" over theirs where in conflict. Employer's Br. at 37. This is "significant," Employer reasons, because Dr. Abboudi testified that Claimant should have been taken out of work after his April 2020 surgery if it was true that his occupation increased the risk of symptom recurrence. *Id.* Similarly, Employer argues that WCJ Hakun capriciously disregarded Dr. Boc's testimony "that working

13

as an HVAC technician would not contribute to or aggravate plantar fibromatosis." *Id.*

Employer's final argument is unavailing, as it is essentially a request to substitute new credibility determinations for those made below. WCJ Hakun explained that he credited Dr. Iannucci's opinions over Employer's experts because the former is "a treating physician." It is well settled that "greater credence may be given to the testimony of a treating physician than to a physician who examines simply to testify for litigation purposes." *D.P. Herk Zimmerman, Jr., Inc. v. Workmen's Comp. Appeal Bd. (Himes)*, 519 A.2d 1077, 1080 (Pa. Cmwlth. 1987). To the extent that WCJ Hakun's explanation for his rejection of the testimony of Drs. Abboudi and Boc was in any way lacking, we have held that a WCJ's failure to explain why he rejected certain testimony is "not fatal to the adjudication," so long as effective appellate review is not precluded. *Roth v. Workmen's Comp. Appeal Bd. (Armstrong World Inds.)*, 562 A.2d 950, 952 (Pa. Cmwlth. 1989). Viewed as a whole, WCJ Hakun's decision can be readily understood to favor the testimony of Claimant's treating physicians.

## III. Conclusion

WCJ Hakun's factual findings have adequate support in the record, including unequivocal testimony by Drs. Iannucci and Paiste that Claimant's work duties aggravated his preexisting, and ultimately disabling, Dupuytren's and fibromatosis. Employer's remaining arguments are essentially an objection to WCJ Hakun's credibility determinations. It is well settled that our "appellate role in a workers' compensation case is not to reweigh the evidence or the credibility of the witnesses, but simply to determine whether the WCJ's findings have the requisite measure of support in the record as a whole." *Elk Mountain Ski Resort, Inc. v. Workers' Comp.*

14

*Appeal Bd. (Tietz, deceased)*, 114 A.3 27, 33 n.5 (Pa. Cmwlth. 2015). Because there is insufficient basis to overturn the findings made below, we affirm the Board.

_____
MATTHEW S. WOLF, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jim's Commercial Service,  :
                   Petitioner  :
  :
        v.  :  No. 1018 C.D. 2025
  :
Anthony DiJoseph (Workers'  :
Compensation Appeal Board),  :
               Respondent  :

# **O R D E R**

AND NOW, this 11th day of June 2026, the order of the Workers' Compensation Appeal Board in the above-captioned matter, dated July 22, 2025, is hereby AFFIRMED.

_____
MATTHEW S. WOLF, Judge